# WALSH, DBA TOM WALSH & CO. *v.* SCHLECHT ET AL., TRUSTEES

No. 75–906.   Argued November 1, 1976—Decided January 18, 1977

402

*Carl R. Neil* argued the cause and filed briefs for petitioner.

*Paul T. Bailey* argued the cause for respondents. With him on the brief was *George Kaufmann.**

Mr. Justice Brennan delivered the opinion of the Court.

The question presented by this case is whether the provision of a collective-bargaining agreement between petitioner, a general contractor, and the Oregon State Council of Carpenters, requiring that petitioner pay contributions to certain trust funds with respect to hours of carpentry work performed by employees of a nonsignatory subcontractor, violated § 302 (a)(1) of the Labor Management Relations (Taft-Hartley) Act, 29 U. S. C. § 186 (a)(1). That section generally prohibits agreements of employers to pay money to any representative of their employees. Sections 302 (c)(5) and (6), however, exempt from this general proscription written agreements to pay money to trust funds jointly created and administered by trustees representing employer associations and the union for the purpose of providing medical or hospital care, pensions, pooled vacations for employees of signatory employers, or to defray the costs of apprenticeship or other training programs.[1]

---

*Briefs of *amici curiae* were filed by *Steven R. Semler* for Huico, Inc.; and by *Richard M. Stanislaw* for the Mechanical Contractor Associations of Washington.

[1] Section 302 of the Labor Management Relations Act, 1947, 61 Stat. 157, as amended, 29 U. S. C. § 186, provides in pertinent part:

"(a) It shall be unlawful for any employer or association of employers . . . to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

"(1) to any representative of any of his employees who are employed in an industry affecting commerce;

.          .          .          .          .

"(c) The provisions of this section shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families, and dependents (or of such employees, families, and dependents jointly with the employees of

Petitioner constructed a federally subsidized low-income apartment project in Salem, Ore. A collective-bargaining agreement between petitioner and the Oregon State Council of Carpenters required petitioner to pay contributions to five employer-union trust funds jointly created by the carpenters' union and multiemployer general contractors associations, and jointly administered by respondents, trustees designated in equal numbers by the employers and union. The trusts are, respectively, the Health and Welfare Trust Fund, the Pension Trust Fund, the Vacation Savings Trust Fund, the Apprenticeship and Training Trust Fund, and the Construction Industry Advancement Fund (CIAF). Only signatory employers may contribute to the funds; and no carpenter employee of a nonsignatory employer is entitled to benefits in the Health and Welfare, Pension, and Vacation Savings Funds, the three funds that provide benefits for carpenter employees.[2] Contributions were payable at the

other employers making similar payments, and their families and dependents): *Provided,* That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer . . . ; (6) with respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: *Provided,* That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds . . . ."

[2] Petitioner conceded that the trustees will not accept contributions from nonsignatory employers. App. 53. The five trust funds involved in this case expressly limit participation in benefits to employees of signatory employers and petitioner makes no claim that the subcontractors' employees received benefits from the funds.

aggregate rate of 96 cents per hour of carpentry work done at the project.

Petitioner subcontracted the framing work on the project to Lloyd Jackson, a framing specialist, who was a nonsignatory employer and whose employees were therefore not eligible for trust fund benefits. In such cases petitioner had the option under a "subcontractor's clause," Art. IV of the collective-bargaining agreement, of requiring "such subcontractor to be bound to all the provisions of this Agreement," or of maintaining "daily records of the subcontractors employees jobsite hours and be liable for payment of these employees [sic] . . . [trust fund] contributions in accordance with this Agreement."[3] Petitioner did neither. He did not require that the subcontractor "be bound" to the agreement and the subcontractor made no contributions to the funds. Instead the subcontractor paid directly to his carpenter employees, as fringe benefits, 96 cents per hour in addition to their wages at union scale,[4] thus paying out the same aggregate of wages

---

[3] Article IV of the Carpenters Master Labor Agreement between general contractors associations and the Oregon State and Southwest Washington District Councils of the United Brotherhood of Carpenters and Joiners of America, with which petitioner by memorandum agreement agreed to comply, provides as follows:

"If an employer, bound by this Agreement, contracts or subcontracts, any work covered by this Agreement to be done at the job site of the construction, alteration or repair of a building, structure or other work to any person or proprietor who is not signatory to this Agreement, the employer shall require such subcontractor to be bound *to all the provisions of this Agreement, or* such employer shall *maintain daily records of the subcontractors employees job site hours and be liable for payment of these employees wages, travel, Health-Welfare and Dental, Pension, Vacation, Apprenticeship and CIAF contributions in accordance with this Agreement.*" (Emphasis added.)

[4] Agreements with the Department of Housing and Urban Development required employers participating in the Salem project to pay their employees according to the prevailing wage scale, as defined in the Davis-Bacon Act, 40 U. S. C. § 276a. Under the Act, fringe benefits may be

and fringe benefits paid by signatory employers in the form of wages to their employees and contributions to the trust funds.

Nor did petitioner maintain daily records of and pay contributions to the trust funds with respect to the hours of carpentry work performed on the project by the subcontractor's carpenter employees. Therefore, after completion of the project, respondent trustees brought this action in the Circuit Court of Multnomah County, Ore., to enforce the provision of Art. IV. Grounded upon petitioner's agreement to "be liable for payment of these [the subcontractor's] employees [*sic*] . . . [trust fund] contributions . . . ," the complaint sought, *inter alia,* an accounting of the hours of carpentry work performed by the subcontractor's employees on the project, and a judgment for the amount of such work at 96 cents per hour. Petitioner's principal defense was that the subcontractor's clause violated § 302 (a)(1). The Circuit Court sustained respondents' demurrer to that defense. The Circuit Court held, however, that it would be "inequitable" to require contributions to the Health and Welfare, Pension, and Vacation Savings Funds because they would in effect amount "to double fringe benefits" with respect to the subcontractor's employees. It therefore ordered an accounting limited to contributions to the Apprenticeship and CIAF trusts that did "not accrue benefits directly to the workmen." The Supreme Court of Oregon affirmed the judgment insofar as it sustained the demurrer to petitioner's defense based on § 302 (a)(1) but, construing the subcontractor's clause as giving all the "funds . . . equal standing under the terms of the contract . . . ," reversed the judgment insofar as it limited the accounting to the Apprenticeship and CIAF trusts.

---

paid either to the workmen directly or to union-employer trusts for the benefit of the workmen. The Act applies to all construction contracts to which the United States is a party.

273 Ore. 221, 225–226, 540 P. 2d 1011, 1013–1014 (1975). We granted certiorari, 424 U. S. 942 (1976). We affirm.

I

The parties agree that the determinative question for decision is that of the proper construction of the subcontractor's clause: whether that clause binds petitioner to make contributions to the trust funds "on behalf of" or "for the benefit of" the subcontractor's employees, so that they may participate in the benefits provided carpenters by the funds. Thus interpreted, the clause would violate § 302 (a)(1) because the subcontractor is not a signatory to the collective-bargaining agreement and his employees are therefore ineligible for trust fund benefits based on carpentry work performed for him. On the other hand, if the clause merely obligates petitioner to pay contributions to the funds *measured by* the hours of carpentry work performed at the project by the subcontractor's employees, the benefits being payable only to carpenters employed by petitioner and other signatory employers, then the clause is authorized by the exceptions to the general prohibition of § 302 (a) enacted in §§ 302 (c)(5) and (6).

Before turning to the question of the meaning of the clause we must address a threshold question—whether federal or state law principles of contract construction, if they differ, are to be applied. Plainly federal law principles apply. Although the Oregon courts were not foreclosed from entertaining this suit merely because petitioner's defense invoked § 302 (a)(1) of the Taft-Hartley Act, *Charles Dowd Box Co.* v. *Courtney*, 368 U. S. 502 (1962), we have proceeded "upon the hypothesis that state courts would apply federal law in exercising [such] jurisdiction" and that "incompatible doctrines of local law must give way to principles of federal labor law." *Teamsters* v. *Lucas Flour Co.*, 369 U. S. 95, 102 (1962) (citations omitted). Application

of federal law is necessary to avoid the "possibility that individual contract terms might have different meanings under state and federal law . . . ," *id.*, at 103.

The Oregon courts did not specify in this case whether federal or state principles of contract construction guided their concurring conclusions that the subcontractor's clause was not to be read as violating § 302 (a)(1). We shall therefore assume that federal principles were applied. In any event, if in fact state rules of contract interpretation were employed, federal rules would require agreement with the Oregon courts' construction. Since a general rule of construction presumes the legality and enforceability of contracts, 6A A. Corbin, Contracts §§ 1499, 1533 (1962), ambiguously worded contracts should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable. The subcontractor's clause although inartfully worded, lends itself to a construction that ties signatory employer contributions to the trust funds as measured both by hours worked by his own employees and hours worked by his nonsignatory subcontractor's employees, and, so construed, Art. IV does not violate § 302 (a)(1).

Petitioner argues that the Oregon Supreme Court's opinion reads the clause as requiring petitioner to make payments "on behalf of" Jackson's employees in order that they may participate in the benefits of the trusts. This reading, he contends, is implicit in the following passage from the State Supreme Court's opinion:

"In this case the requirement of such a written contract was satisfied in that defendant had a written contract with the union which required that he make contributions to the trust funds *for his own employees and* also specifically provided that in the event he engaged a subcontractor to do any work covered by the agree-

ment he would be liable for payments into the various trust funds *for the employees of such a subcontractor.*" 273 Ore., at 229, 540 P. 2d, at 1015 (emphasis added).

Read in isolation, this somewhat ambiguous passage might appear to support petitioner's argument. In the context of the entire opinion, however, particularly its reliance upon lower federal court decisions upholding the legality of payments measured in whole or in part by wages paid to employees ineligible to receive benefits, it becomes clear that the Oregon Supreme Court read the subcontractor's clause as an agreement by petitioner to make contributions to the funds measured by the hours of carpentry work performed by the subcontractor's employees, not "on behalf of" or "for the benefit of" the nonsignatory contractor's ineligible employees, but solely for the benefit of the employees of petitioner and other signatory employers. This conclusion follows, we think, from the Oregon Supreme Court's treatment of *Moglia* v. *Geoghegan,* 403 F. 2d 110 (CA2 1968), and *Kreindler* v. *Clarise Sportswear Co.,* 184 F. Supp. 182 (SDNY 1960). In rejecting petitioner's argument that § 302 (a)(1) prohibits an employer from making any contributions except for the benefit of his own and other signatory employers' employees, the court characterized language in *Moglia,* cited by petitioner in support of this construction, as "not necessary to . . . decision in that case, in which there was no written agreement, and it is not binding upon this court in this case." 273 Ore., at 229 n. 4, 540 P. 2d, at 1015 n. 4.[5] Rather, the Oregon Supreme Court relied on *Kreindler,* also involving payments to a trust fund for employees of a

---

[5] Moglia had been employed for 28 years by a single employer whose payments into the trust fund had been illegal because he was not a party to a written agreement as required by § 302 (c)(5)(B). 403 F. 2d, at 114. The Court of Appeals for the Second Circuit concluded that Moglia was not eligible to receive benefits because he had never been an employee of an employer lawfully contributing to the fund.

nonunion contractor, where the contention was rejected that an employer's contributions measured by the hours worked of another employer's employees violated § 302 (a)(1). The court quoted extensively from the *Kreindler* opinion's reasoning in concluding that payments might be legal even though measured by hours worked by employees of another employer. The court stated flatly: "We agree with [the] statement" from *Kreindler* that " '[t]he fact that the employees of Clarise's contractors cannot share in the payments based on their payrolls which Clarise has agreed to make does not give Clarise the right to avoid its agreement as illegal.' " 273 Ore., at 230, 540 P. 2d, at 1015.[6] Accord, *Budget Dress Corp.* v. *Joint Board of Waistmakers' Union,* 198 F. Supp. 4 (SDNY 1961), aff'd, 299 F. 2d 936 (CA2 1962); *Minkoff* v. *Scranton Frocks, Inc.,* 181 F. Supp. 542 (SDNY), aff'd, 279 F. 2d 115 (CA2 1960); *Greenstein* v. *National Skirt & Sportswear Assn.,* 178 F. Supp. 681 (SDNY 1959).

We agree that enforcement of the subcontractor's clause, as so construed by the Oregon Supreme Court to require petitioner to make contributions measured by the hours worked by his subcontractor's employees, not only is consistent with the wording of §§ 302 (c)(5) and (6) but also does no disservice to the congressional purpose in enacting § 302 [7] to combat "corruption of collective bargaining

---

[6] A provision of the controlling collective-bargaining agreement required Clarise, as a member of a multiple-employer bargaining association, to make payments to the union's health and welfare and retirement funds based both upon Clarise's own payrolls and upon the payrolls of the contractors who manufactured Clarise's product. The employees of Clarise's contractors were not eligible to receive benefits from the funds.

[7] The agreement establishing the CIAF trust provides for exclusive employer administration and that fund is therefore outside the coverage of § 302.

Our decision that the subcontractor's clause does not violate § 302 makes it unnecessary to address petitioner's argument that § 302 (c) (6) should be read to incorporate the "exclusive benefit" requirement of § 302 (c)(5).

through bribery of employee representatives by employers, . . . extortion by employee representatives, and . . . the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." *Arroyo* v. *United States,* 359 U. S. 419, 425–426 (1959).

## II

Petitioner also advances an argument, apparently not made in the Oregon courts, that the subcontractor's clause "frustrates" the objectives of the Davis-Bacon Act, 40 U. S. C. § 276a, by increasing his labor costs over the minimum required by that Act. However, the Davis-Bacon Act "was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects." *United States* v. *Binghamton Constr. Co.,* 347 U. S. 171, 176–177 (1954). That objective is clearly not "frustrated" when contractual arrangements between employers and their employees result in higher compensation and benefits than the floor established by the Act.

*Affirmed.*

MR. JUSTICE WHITE, dissenting.

Because petitioner, a general contractor, employed a non-union subcontractor, who did not subscribe to the provisions of the collective-bargaining agreement, he was required to maintain records of the jobsite hours worked by the subcontractor's employees and to be "liable for payment of these employees [*sic*] wages, travel, Health-Welfare and Dental, Pension, Vacation, Apprenticeship and CIAF contributions in accordance with this Agreement." Record 82–83. The Oregon Supreme Court described this language as making petitioner liable "for payments into the trust funds for the employees of the nonunion subcontractor." This means to me that the payments were on behalf of the subcontractor's

employees. It also appears a straightforward reading of the contractual language that the "subcontractors . . . employees . ˌ . contributions" be made by petitioner. Had the subcontractor been eligible to make these contributions, they surely would have been made for the benefit of his employees. The sensible inference from the contractual language is that ·the contractor, the petitioner, intended the same result. Common sense tells us that petitioner had no· intention of making contributions with respect to employees who could never benefit.

As construed in this way, the provision is illegal because the employees of the noncontributing contractor may not be a beneficiary of the trust funds, even though the contributions are made with respect to them. But this would not be the first time that parties have drafted unenforceable contractual provisions, either by design, accident, or mistake.

I do not understand why the Court feels such compulsion to save the contract by construing it to mean that the payments at issue are not for the benefit of the contractor's employees at all and are not made on their behalf. The result of this construction is that in addition to the full contract price paid to the subcontractor, petitioner must pay into the trust funds 96 cents for each jobsite hour worked by the subcontractor's employees, these funds to be held for the employees of the contributing employers but excluding the subcontractor's employees. This is simply a penalty for employing a nonsignatory subcontractor, a penalty the Court creates in construing the contract as it does. With all due respect, I dissent and would reverse the judgment below.