No. 79-78

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

SLETTEN CONSTRUCTION COMPANY,
A CORPORATION,

Defendant and Appellant,

vs.

AUDIT SERVICES, INC., A Montana Corporation,

Plaintiff & Respondent

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade.
Honorable John McCarvel, Judge presiding.

Counsel of Record:

For Appellant:

Jardine, Stephenson, Blewett and Weaver, Great Falls,
Montana
Alexander Blewett III argued, Great Falls, Montana

For Respondent:

Cure and Borer, Great Falls, Montana
Max Davis argued, Great Falls, Montana

Submitted: September 11, 1980

Decided: OCT 27 1980

Filed: OCT 27 1980

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, the Honorable John M. McCarvel presiding. Audit Services, Inc. (Audit Services), the assignee of the trustees of several Laborers, Operating Engineers and Teamster trust funds, filed a complaint against Sletten Construction Co. (Sletten), attempting to recover fringe benefit contributions for hours worked by employees of Swartz Brothers Excavating, Inc. (Swartz), a subcontractor of Sletten on fifteen different projects, from the period of January 1, 1977, through September 18, 1977. Audit Services is also attempting to recover audit fees, liquidated damages, interest and attorney fees.

During the subject period of this litigation, Sletten was a party to and bound by several collective bargaining and trust agreements with numerous contractors' associations and unions. All fifteen Sletten-Swartz projects were covered by one of the collective bargaining agreements (CBAs). By the terms of the CBAs, Sletten agreed to make fringe benefit contributions to the unions' trust funds. Each of these agreements also contain a subcontractors' clause. Although the wording of the clauses vary slightly, their purposes are the same. The clauses state that the employer (Sletten) agrees that the contractors to whom subcontracts are let shall be required to comply with all the requirements, conditions and intents of the CBAs and shall continue to do so throughout all parts of the subcontract work. Any violation of the agreement would constitute a breach of the agreement. One clause

-2-

specifically allows that controversies over the interpretation of the agreement be subject to a grievance arbitration procedure.

The Swartz business first came into existence in the early 1970's when Robert Swartz began operating an excavating business known as Robert Swartz Excavating, a sole proprietorship. Subsequently, Robert's brother Clarence joined the business, and the name was changed to Swartz Brothers Excavating, which was a partnership. In 1975, the brothers incorporated their business which became known as Swartz Brothers Excavating, Inc. During these entity changes, the business carried on the same type of work. In its capacity as a sole proprietorship, partnership and corporation, the excavating business executed a series of compliance agreements with the Laborers, Operating Engineers and Teamster unions. The agreements incorporated the terms of the existing CBAs negotiated by those unions with the aforementioned contractors' associations of which Sletten is a member. The compliance agreements also incorporated the terms of the Montana Laborers, Operating Engineers, and Teamster trust funds. A number of the compliance agreements were executed prior to the incorporation of Swartz Brothers Excavating, Inc.

While performing work for Sletten, Swartz Brothers Excavating, Inc., observed all current CBAs by making required fringe benefit contributions on behalf of its Laborers, Operating Engineers and Teamster employees until mid-1977, the subject period of this litigation. At that time Swartz stopped making payments because it was having cash-flow problems. Eventually all operations by Swartz

ceased, and a petition for bankruptcy was filed in October 1977.

Audit Services, under two theories of liability, filed suit against Sletten seeking the contributions Swartz had failed to make. Under the first theory, Audit Services alleged Sletten breached its obligation under the CBAs. Under the second theory, Audit Services alleged Sletten was obligated to pay contributions under section 39-3-706, MCA. Basing its decision on both theories, the District Court granted judgment in favor of Audit Services in the amount of $9,578.89 as fringe benefit contributions for Swartz's employees, $426.19 as liquidated damages, interest of $27.64, audit fees of $548.71, and attorney fees of $2,925.00. Sletten appeals.

The issue presented on appeal is whether the District Court erred in finding that the subcontractors' clauses in the collective bargaining agreements contractually obligated Sletten Construction Co. to pay fringe benefit contributions to Audit Services, Inc., for hours worked by Swartz Brothers Excavating, Inc., a subcontractor of Sletten Construction Co.

Sletten contends that there is no contractual obligation under the CBAs because the subcontractors' clauses are unenforceable and void in accordance with Title 29, U.S.C.A. §158(e). It argues that the clauses, in effect, provide that Sletten agrees not to subcontract any work to any contractor who is not a union contractor employing union employees and, thus, are prohibited by §158(e).

Respondent argues that the subcontractors' clauses

-4-

merely require Sletten to apply the same terms and conditions in its own union-signatory clauses; they are all union-standards clauses and, therefore, fall outside the scope of 29 U.S.C. §158(e).

Federal, rather than state, law principles of contract construction apply in determining the meaning of the subcontractors' clause since it is a provision of a collective bargaining agreement. Application of federal law is necessary to avoid the "possibility that individual contract terms might have different meanings under state and federal law." Walsh v. Schlecht (1977), 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641.

The pivotal issue is whether the subcontractors' clauses are union-signatory or union-standards clauses. We agree with Judge Skelly Wright who held in Truck Drivers Union Local No. 413, etc. v. NLRB (D.C. Cir. 1964), 334 F.2d 539, cert. denied, 118 U.S.App.D.C. 149, that union-signatory clauses are secondary and, therefore, within the scope of 29 U.S.C. §158(e) of the NLRA, while union-standards clauses are primary as to the contracting employer. The subject subcontractors' clause would be a union-signatory clause if it required subcontractors to have collective bargaining agreements with petitioner unions or their affiliates or with unions generally.

We interpret the clause, however, as merely requiring that subcontractors observe the equivalent of union wages, hours, and the like. Since we find that this clause only requires union standards, and not union recognition, we rule it primary and, thus, outside the prohibition of §158(e). The concept of a "union-standards" subcontracting clause has

repeatedly been approved in federal cases. Mine Workers v.

Pennington (1965), 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d

626; see, e.g., NLRB v. National Maritime Union (2nd Cir.

1973), 486 F.2d 907.

Having determined that the clauses are not void, it is

necessary to decide if they impose contractual liability on

Sletten. There is no dispute that the clauses incorporate

the fringe benefits requirements of the underlying

agreement. The clauses speak of a continuing obligation to

see that the subcontractor abide by the terms and conditions

of its CBA, including fringe benefits, and not merely the

obtaining of an initial agreement. Since the obligation is

assumed by the primary contractor, when it is breached logic

dictates that the remedy lay against the primary contractor

in favor of the trustees.

The Ninth Circuit recently decided this very issue in

Seymour v. Hull & Moreland Engineering (9th Cir. 1979), 605

F.2d 1105. In that case there was a subcontractors' clause

similar in wording to those in issue here. It was

interpreted in the following manner:

> "Article VIII of the 1969-1974 Master Survey
> Agreement provides that:
>
> "'[i]t is further agreed that should any Employer
> sublet any part or portion of his work covered by
> this Agreement, to any other Employer or sub-
> employer, the provisions of this Agreement shall
> be binding upon and applicable to all work per-
> formed by said Sub-employer on the job site.'
>
> "Article VIII was brought to the trial court's
> attention and no express ruling on its effect
> was handed down; however, it is obvious that the
> court could not have found the defendants not
> liable for Hardin's time without also finding
> that Article VIII imposed no obligation.
>
> "The trustees contend on appeal that Article
> VIII is subject to only one lawful interpreta-
> tion, and that this court must give it that

interpretation in accordance with the principle that a contract provision should not be interpreted in a fashion which renders it meaningless. According to the trustees, the only lawful interpretation that can be given Article VIII is that it requires the defendants to make contributions to the fringe benefit funds measured by hours worked by nonsignatory subcontractors, but that such contributions are not to be on behalf of such subcontractors. The trustees thus propose an interpretation somewhat analogous to an exclusive listing arrangement in the real estate brokerage field: regardless of who actually does the work the union's fringe benefit fund will be compensated.

"The language of Article VIII is reasonably susceptible to the trustees' interpretation. Even though the language does not speak in terms of affirmatively requiring the employer to bind subcontractors to the Master Survey Agreement, it does say that the provisions of the agreements 'shall be binding upon and applicable to' work performed by subcontractors. If the agreement is 'applicable' to subcontractors' work, then it is reasonable to infer that the employer must make contributions to the fringe benefit funds based upon non-signatory subcontractors' work.

"This ambiguous provision, however, is susceptible to several interpretations. The trustees maintain that under federal labor legislation theirs is the only lawful interpretation. The trustees cite Walsh v. Schlecht, 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977), for the proposition that so-called 'subcontractors' clauses' calling for payment of fringe benefits to union trust funds are legal only if they require payments to the fund generally, based upon hours worked by subcontractors, and not to make payments on behalf of employees not covered by the agreement. The restrictive interpretation of such clauses, according to Schlect, is mandated by §302 of the Labor Management Relations Act, 29 U.S.C. §186. §302 makes unlawful the payment of anything of value by an employer to '. . . any representative of his employees who are employed in an industry affecting commerce . . .' 29 U.S.C. §186(a)(1). §302 was intended to prevent bribery of union officials by employers. Among the exceptions to this rule, however, is a provision which allows payments to trust funds '. . . for the sole and exclusive benefit of the employees of such employer . . .' 29 U.S.C. §186(c)(5). Walsh held that one side effect of §302 is that employers may make contributions only to trust funds established for their own employees, and not for

the benefit of a non-employee independent con-
tractor. Accordingly, subcontractors' clauses
may require only that contributions be made
measured by the hours worked by such non-
employees.

"(8) It is well-settled that ambiguously-worded
contracts should not be interpreted to render
them illegal and unenforceable where the word-
ing yields a construction which is both legal
and enforceable. Walsh v. Schlect, 429 U.S.
401, 408, 97 S.Ct. 679 (1977); cf. In re Wonder-
fair Stores, Inc. of Arizona, 511 F.2d 1206
(9th Cir. 1975); Washington Capitols Basketball
Club, Inc. v. Barry, 419 F.2d 472 (9th Cir.
1969). Unless Article VIII be given the con-
struction mandated by Walsh, it has no logical
or legally enforceable meaning. If the union
cannot compel payments to fringe benefits funds
based upon Article VIII, then there is little
that it can enforce under that article. With
all the signposts pointing so forcefully in the
direction of one interpretation, we have no
choice but to give the contract that interpreta-
tion. . ." Seymour v. Hull & Moreland Engineering,
605 F.2d at 1114-1115.

Appellant contends, and respondent agrees, that the

subcontractors' clauses merely state that all subcontractors

to whom Sletten subcontracts work shall be required to

comply with the terms of the CBAs or that Sletten shall not

subcontract work to contractors who do not agree with the

agreements. Both parties fail to mention that, if a

subcontract is so let, the employer (Sletten) agreed to be

responsible to see that the subcontractors comply with the

requirements of the CBA, including the payment of fringe

benefits in accordance with the schedules in the rear of the

CBAs. It is, therefore, reasonable to infer that, if the

subcontractor fails to make the payments, it is the primary

contractor's obligation to live up to his agreement and do

so. We hold that the subcontractors' clauses, the payment

schedules and the compliance agreements constitute a legal

and enforceable promise to pay on the part of Sletten.

-8-

Affirmed.

_____
                 Justice

We concur:

_____
        Chief Justice

_____

_____

_____
                 Justices

-9-