Argued and submitted February 17, affirmed on appeal and on cross-appeal
April 18, 1984

## VERMEER et al,
*Respondents - Cross-Appellants,*

*v.*

## CLARK COUNTY FENCE, INC.,
*Appellant - Cross-Respondent.*

(A 7908-03915; CA A27364)

679 P2d 1389

Lester V. Smith, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Amy Segel and Bullard, Korshoj, Smith & Jernstedt, Portland.

Herbert B. Galton, Portland, argued the cause for respondents - cross-appellants. With him on the brief were Jim Backes and Galton, Popick & Scott, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals from a judgment requiring it to pay $5,124.33 in delinquent union trust fund contributions, plus liquidated damages, attorney fees and costs. We affirm.

Plaintiffs in this action are trustees of various employe benefit funds established pursuant to the Master Labor Agreement (MLA) between the Oregon-Columbia chapter of the Associated General Contractors of America (AGC) and the Oregon, Southern Idaho and Wyoming District Council of Laborers (Union). Defendant is a Washington corporation qualified to do business in Oregon and engaged in the sale and installation of fencing. Of defendant's outstanding shares, 500 are owned by George J. Dahlenberg, president of the company, and 500 are owned by R. C. Dahlenberg, George's son and defendant's vice-president (R.C.).

In September, 1976, in preparation for work on a job site known as the Boardman project, defendant executed a "Laborers Compliance Agreement" with the Union, by which it agreed to be bound by the terms and conditions of the MLA. The MLA included provisions requiring defendant to make contributions to the various trusts based on compensable man hours. Beginning in November, 1976, and continuing through March, 1979, defendant sent monthly remittance reports to the Laborer's Trust Fund as required by the trust agreement. Defendant reported hours worked by R.C.[1] and Larry Haugsted, both of whom were union members and performed laborer's work, but it did not report the hours worked by its nonunion laborers. During the same period, defendant's contacts with the Union were minimal, and the Union made no objection to defendant's noncompliance with the MLA provisions regarding wages, hours and working conditions.

In February and March, 1979, an accountant employed by plaintiffs conducted an audit of defendant's payroll records. He concluded that defendant had failed to report a total of 1876 compensable man hours and was, therefore, delinquent in contributions to the trust funds in the amount of $5,124.33, plus $864.53 in liquidated damages as provided in the trust agreement. Defendant acknowledged the

---

[1] When defendant's payroll records were examined by plaintiffs' accountant, he determined that defendant had under-reported the hours worked by R.C.

deficiency hours for R. C. only. Plaintiffs thereafter commenced this action to recover the delinquency.

As a defense to the action, defendant argued, *inter alia,* that it had repudiated its agreement with the Union and, therefore, was not liable for any trust contributions or that, even if it were found not to have repudiated, it was not required to make contributions on behalf of R.C., because such payments would violate § 302(c)(5) of the Labor Management Relations Act (LMRA), 29 USC § 186(c)(5). The trial court held that defendant had not repudiated the agreement with the Union and that the trustees could collect contributions based on the hours worked by R.C. without violating § 302(c)(5). Defendant assigns both of these rulings as error and also challenges the court's award of attorney fees of $2,750 to plaintiffs. Plaintiffs cross-appeal on the amount of attorney fees awarded. We consider the assignments in order.

■■■ Section 8(f) of the National Labor Relations Act, 29 USC § 158(f), authorizes a construction industry employer to sign a prehire agreement, such as the Compliance Agreement signed by defendant, covering employes who will be engaged in construction work, before the employes have indicated their support for the union. Such an agreement is subject to repudiation until the union achieves majority status. However, unless the employer repudiates the agreement, it is obligated to make trust fund contributions provided therein, even if the union has not attained majority status. *Jim McNeff, Inc. v. Todd,* 461 US 260, 103 S Ct 1753, 75 L Ed 2d 830 (1983).

■ In this case, defendant contends that the agreement is unenforceable, because it was repudiated from its inception. It points to its continual noncompliance with the MLA in that it followed its own policies on wages and working conditions, used nonunion labor, had no union steward and checked off no union dues for its employees. According to defendant, this course of conduct sufficiently notified the union that it intended to repudiate the agreement. Were this inconsistent behavior the only evidence in the record, we might be inclined to agree. However, in other respects, defendant acted affirmatively and consistently with the MLA. It sent monthly remittance reports to the trust for over two years, made trust contributions based on hours worked by Haugsted and R.C.,

acknowledged deficiency hours for R.C. and submitted to an audit by the trustee's accountant. A defendant engaged in such conduct has not repudiated the agreement. *See Jim McNeff, Inc. v. Todd, supra.*

Having determined that the Compliance Agreement was not repudiated, we consider whether requiring trust contributions based on the hours worked by R.C. violates § 302(c)(5) of the LMRA, 29 USC § 186(c)(5). Generally, § 302 prohibits employers from making payments to employes' representatives in order to prevent employers from tampering with the loyalty of union officials. Subsection (c)(5), however, provides an exception which permits the payment of money or other things of value by the employer

> "* * * to a trust fund established by such representative *for the sole and exclusive benefit of the employees of such employer* and their families and dependents * * *." (Emphasis supplied.)

Defendant argues that, because R.C. is a 50 percent shareholder of a closely held corporation, he is actually an employer rather than an employe and, therefore, payments on *his* behalf would violate § 302(c)(5), *i.e.,* the payments would not be solely for the benefit of employes. The trial court rejected this argument, concluding that the MLA requires defendant to make trust contributions "measured by" the hours worked by R.C., whether or not he was personally entitled to make claims against the fund.

We agree with the trial court. An employer's obligation to pay into a § 302(c)(5) trust can be measured by any standard acceptable to both the union and the employer. *Burke v. French Equipment Rental, Inc.,* 687 F2d 307 (9th Cir 1982), *citing Walsh v. Schlecht,* 429 US 401, 97 S Ct 679, 50 L Ed 2d 641 (1977). The MLA provides that the employer make contributions to the various trust funds at a "per compensable man-hour" rate. We interpret "compensable man-hour" to mean hours compensated for work done under the agreement. Because R. C. was performing laborers' work covered by the MLA, defendant was required to make trust fund contributions measured by his hours worked, regardless of whether under § 302(c)(5), as a 50 percent owner, he could even make a claim against the trust. *See Burke v. French Equipment*

*Rental, Inc., supra.* As to the latter question, we express no opinion.

■ Finally, as to the award of attorney fees of $2,750 to plaintiffs, we find no error.

Affirmed on the appeal and on the cross-appeal.