Loran W. ROBBINS, et al., Plaintiffs,

v.

MAIN LINE HAULING CO., INC., Defendant.

No. 83–301C(5).

United States District Court, E.D. Missouri, E.D.

July 31, 1984.

Donald J. Weyerich, St. Louis, Mo., for plaintiffs.

Peper, Martin, Jensen, Maichel & Hetlage, Richard E. Jaudes, Bradley S. Hiles, Richard J. Pautler, St. Louis, Mo., for defendant.

### MEMORANDUM OPINION

LIMBAUGH, District Judge.

This is a suit brought to collect contributions allegedly owed to union pension and health and welfare funds. As no contributions are owed, judgment will be entered in favor of the defendant.

Plaintiffs Loran W. Robbins, Marion M. Winstead, Harold J. Yates, Earl L. Jennings, Jr., Robert L. Baker, Howard McDougall, Arthur Bunte, Jr. and R.V. Pulliam, Sr. are the trustees of the Central States, Southeast and Southwest Areas Pension Fund and, as such, are fiduciaries of the Pension Fund within the meaning of the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (29 U.S.C. § 1002(1), (2), (3), (21) and (37), § 1105(c)(1)(B), § 1132 and § 306).

Plaintiffs Loran W. Robbins, Marion M. Winstead, Harold J. Yates, Earl L. Jennings, Jr., Robert L. Baker, Howard McDougall, Arthur Bunte, Jr. and R.V. Pulliam, Sr. are also the trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund, and as such are fiduciaries of the Health and Welfare Fund within the meaning of the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (29 U.S.C. § 1002(1), (2), (3), (21), § 1105(c)(1)(B), § 1132 and § 306). The Pension Fund and the Health and Welfare Fund are employee benefit plans within the meaning of the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (29 U.S.C. § 1002(1), (2), (3), (21), § 1105(c)(1)(B) and § 1132).

Defendant Main Line Hauling Company, Inc., is a Missouri corporation with its principal place of business in Missouri. Defendant is engaged in an industry affecting commerce within the meaning of § 3(5), (11), (12) and (14) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1002(5), (11), (12) and (14), § 3 of the Multiemployer Pension Plan Amendments Act of 1980 and the Labor Management Relations Act of 1947 (29 U.S.C. §§ 151 et seq.).

During various times since 1964, most employees of the defendant have been represented for collective bargaining purposes by three different locals of the International Brotherhood of Teamsters—Local Union No. 600 (St. Louis, Missouri); Local Union No. 864 (Rolla, Missouri); and Local Union No. 984 (Memphis, Tennessee). (One employee was a member of Local Union No. 215 (Evansville, Indiana); however, Local No. 215 did not represent the employee for collective bargaining purposes at Main Line.) The union representation of the defendant's employees has been exclusive— no employee has been represented by more than one local.

On or about March 1, 1974, the defendant entered into a Collective Bargaining Agreement with Local Union No. 864 governing those employees represented by Local Union No. 864. Said Collective Bargaining Agreement with Local Union No. 864 did not contain provisions for pension contributions or health and welfare contributions. The Agreement was to terminate on March 1, 1977, but would continue from year-to-year unless notice of cancellation was given in a specified manner. Neither party has cancelled the Collective Bargaining Agreement. Defendant has never entered into a Collective Bargaining Agreement with Local Union No. 864 requiring contributions into the Central States, Southeast and Southwest Areas Health and Welfare and Pension Funds.

On or about December 1, 1973 the defendant entered into a Collective Bargaining Agreement with Local Union No. 984 governing those employees represented by Local Union No. 984. Said Collective Bargaining Agreement with Local Union No. 984 did not contain provisions for pension contributions or health and welfare contributions. The Agreement was to terminate on December 1, 1977, but would continue from year-to-year unless notice of cancellation was given in a specified manner. Neither party has cancelled the Collective Bargaining Agreement. Defendant has never entered into a Collective Bargaining Agreement or any other agreement with Local Union No. 984 requiring contributions into the Central States, Southeast and Southwest Areas Health and Welfare and Pension Funds.

On or about January 1, 1968, the defendant entered into a Collective Bargaining Agreement with Local Union No. 600, designated as the National Master Freight Agreement. The National Master Freight Agreement included a supplementary agreement, designated the Over-the-Road Motor Freight Supplemental Agreement. The Over-the-Road Motor Freight Supplemental Agreement contained provisions for pension and health and welfare contributions on behalf of employees represented by Local Union No. 600. The National Master Freight Agreement and the Over-

the-Road Motor Freight Supplemental Agreement contained expiration dates of March 31, 1970. Article 37 of the National Master Freight Agreement and Article 68 of the Over-the-Road Motor Freight Supplemental Agreement provided for renewal extensions if neither party gave written notice of cancellation of the Agreement sixty (60) days prior to March 31, 1970. Neither Main Line nor Local Union No. 600 gave cancellation notice prior to March 31, 1970. Defendant has not signed a Collective Bargaining Agreement or otherwise entered into a Collective Bargaining Agreement with Local Union No. 600 since January 8, 1968.

Defendant contributed to the Central States, Southeast and Southwest Areas Pension Fund and Health and Welfare Fund from January 1, 1968 through and including March 31, 1970 on behalf of its employees represented by Local Union No. 600 pursuant to the National Master Freight Agreement and Over-the-Road Motor Freight Supplemental Agreement. Subsequent to March 31, 1970, the defendant voluntarily contributed on behalf of its employees represented by Local Union No. 600. Since on or about an unknown date in 1968, the defendant began voluntarily contributing to the Central States, Southeast and Southwest Areas Pension Fund and Health and Welfare Fund on behalf of certain of its employees represented by Local Union No. 864. Defendant has never contributed to the Funds on behalf of its employees represented by Local Union No. 984.

Since the termination date of the National Master Freight Agreement on March 31, 1970, the plaintiffs have submitted monthly statements to the defendant for Pension and Health and Welfare contributions. Defendant made payments from 1970 through and including May, 1982 at which time the defendant discontinued contributions. The contributions applied only to employees who were represented by Local Union No. 600 or Local Union No. 864.

On May 6, 1982, representatives of the defendant and Local Union No. 864 signed a document entitled "Interim Agreement." The Interim Agreement purported to bind the defendant to the National Master Freight Agreement then under negotiation between the Teamsters National Bargaining Committee and various Employer Associations of which the defendant was not a member. By its terms, the Interim Agreement was applicable to the defendant's terminals, operations and employees which were covered on May 6, 1982, by the National Master Freight Agreement.

On July 11, 1983, the defendant mailed a Notice of Cancellation to Mr. Jackie Presser, President of the International Brotherhood of Teamsters, regarding the National Master Freight Agreement covering the period April 1, 1967 through March 31, 1970. The letter was received by Mr. Presser on July 15, 1983. In the letter, the defendant disclaimed having any responsibility under the National Master Freight Agreement, but notified Mr. Presser that Main Line was cancelling and terminating any obligation it might still have under the 1967–1970 National Master Freight Agreement. If the 1967–1970 Agreement was still in effect, this letter had the effect of terminating the Agreement prior to or on September 17, 1983.

The Teamsters Union has negotiated five National Master Freight Agreements and Over-the-Road Motor Freight Supplemental Agreements during the period of time from April 1, 1970 through the present. Defendant has not been a signatory employer to any of the five National Master Freight Agreements or Over-the-Road Motor Freight Supplemental Agreements. Defendant has not adopted or acted pursuant to major provisions in the five National Master Freight Agreements and Over-the-Road Motor Freight Supplemental Agreements in existence from April 1, 1970 through the present time. Defendant has not followed provisions on at least the following matters: wages, mileage rates, cost-of-living allowances, arbitrations, grievances, vacations, holidays, leaves-of-absence and dues check-off. No union lo-

cal has taken steps to enforce these various provisions.

During certain periods of time beginning in 1977 and continuing to present, the defendant has employed the following individuals, among others, as truck drivers: Danny Cordia, Wendell Howard, Paul Eckstein, Darrell Huskey, David McMullin, William Risili, Lindell Gibbs, Bill Howard and William Ketchum. The issue in this lawsuit is whether additional contributions must be paid on behalf of these nine men.

Employee Danny Cordia was employed by the defendant for a period of time during 1977, during which time he was a member of Local Union No. 984. Wendell Howard was employed for a period of time during 1977, during which time he was a member of Local Union No. 215. Paul Eckstein was employed from early 1977 through early 1983. Through October, 1979 Mr. Eckstein was not a member of any local union of the Teamsters. In November, 1979, Mr. Eckstein joined Local Union No. 864. Darrell Huskey was employed on a sporadic basis during 1981 and 1982. During that time, he was a member of Local Union No. 864. David McMullin was employed from 1980 through 1982. During that period of time, Mr. McMullin was a member of Local Union No. 864. William Risili was employed during portions of 1979 and 1980, during which time he was not a member of any local union of the Teamsters. Lindell Gibbs has been employed from 1972 until the present time. During all times of Mr. Gibbs' employment, he has been a member of Local Union No. 864. Bill Howard has been employed since 1955 and continuing until the present time. During his employment, he has been a member of Local Union No. 600. William Ketchum has been employed from 1972 until the present time. During his employment, Mr. Ketchum has been a member of Local Union No. 600.

■ The defendant may not make contributions to the plaintiffs' trust funds unless "the detailed basis on which such payments are to be made is specified in a written agreement...." 29 U.S.C. § 186(c)(5)(B);

*Hinson v. N.L.R.B.,* 428 F.2d 133 (8th Cir. 1970); *Moglia v. Geoghegan,* 403 F.2d 110 (2d Cir.1968), *cert. denied,* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969); *Local Union No. 529, United Brotherhood of Carpenters and Joiners of America,* 321 F.Supp. 869 (W.D.Ark.1971). *Cf. Walsh v. Schlecht,* 429 U.S. 401, 407, 97 S.Ct. 679, 684, 50 L.Ed.2d 641 (1977).

The defendant's union employees were represented by three different union locals. Representation was exclusive, that is, each employee was represented by only one local. Because of this, agreements with a particular local covered only employees who belonged to that local.

There was no written agreement requiring contributions on behalf of employees represented by Local Union No. 984. The only written agreement between the defendant and the local was the Collective Bargaining Agreement of 1973, but that Agreement did not provide for pension or health and welfare contributions. There also was no adoption or ratification of any writing, for no contributions were made on behalf of members of Local Union No. 984.

■ With respect to Local Union No. 864, the Collective Bargaining Agreement of 1974 was written, but it did not provide for pension and health and welfare contributions. To the contrary, the defendant deliberately left out a provision for contributions when the Agreement was negotiated. The plaintiffs argue, however, that the defendant adopted various written agreements, namely, the National Master Freight Agreements and supplements, by making contributions in accordance with the rates set forth in those agreements. Adoption is only a form of acceptance. *Moglia, supra,* at 118. The defendant did not impliedly accept the Agreements and supplements, for it did not follow a number of major provisions. It did not even accept the pension and health and welfare provisions, for it did not make contributions on behalf of all its employees who were Local 864 members. The fact that some payments were made does not constitute a

written agreement required by § 186. *Moglia, supra.*

 Nor was the "Interim Agreement" of 1982 an agreement requiring contributions. Entered into with Local Union No. 864, it applied only to employees covered by the National Master Freight Agreement, but none of the defendant's Local 864 employees had been covered by the National Master Freight Agreements.

There once was a written agreement requiring contributions on behalf of members of Local Union No. 600. An early collective bargaining agreement, the National Master Freight Agreement with the Supplemental Agreement entered into in 1968, as well as the related participation agreements, constituted a written agreement requiring payments to the pension and health and welfare funds. For several reasons, these do not require any additional contributions by the defendant. First, the collective bargaining agreement is no longer in effect. The defendant has long ignored major provisions, and the local has not attempted to enforce these provisions. By their conduct, the defendant and the local terminated the collective bargaining agreement long ago. Second, even if the collective bargaining and related participation agreements are still in effect, so are the contribution rates they provide for. Those rates are much lower than the amounts the defendant has already paid. If the agreements are still in effect, the defendant is actually ahead on its payments.

The plaintiffs also contend that the defendant is bound by the post-1970 National Master Freight Agreements. These are not written agreements within the meaning of § 186. The defendant did not sign the Agreements. Nor did it adopt them, for it did not follow major provisions. Apparently, the Freight Agreements were not even presented to the defendant by Local Union No. 600.

Thus, with respect to each of the locals, there is no written agreement requiring the contributions the plaintiffs claim are owed. Judgment will therefore be entered in favor of the defendant on the plaintiffs' claims.

The defendant filed a counterclaim for excess contributions. The counterclaim was conditioned on this Court finding that the 1967–1970 Agreement was still in effect. A finding to the contrary having been made, the plaintiffs prevail on the counterclaim.

The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.Civ.P. 52. In evaluating the various items of evidence, the Court has considered the parties' objections and given the materials the weight they deserve.