ABBATE, Joseph, William Lyons, Joseph Rizzo, John Bopp, John Muse and Paul Atamia, Trustees of the Jointly Administered Fund, Local 945 International Brotherhood of Teamsters Pension Fund, Appellants,

v.

BROWNING–FERRIS INDUSTRIES OF ELIZABETH NEW JERSEY, INC., Browning-Ferris Industries, and John Doe and Richard Roe, said names being fictitious but intending to be the corporate officers and directors of Browning-Ferris Industries of Elizabeth New Jersey, Inc. and of Browning-Ferris Industries, Appellees.

No. 84–5692.

United States Court of Appeals, Third Circuit.

Argued April 30, 1985.

Decided July 3, 1985.

Rehearing and Rehearing In Banc Denied July 30, 1985.

Ira Drogin (argued), Toni Robinson, Leaf Sternklar & Drogin, New York City, for appellants.

Kevin J. Coakley, Peter J. Pizzi, Connell, Foley & Geiser, Newark, N.J., Daryll Love, John N. Raudabaugh (argued), Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for appellees.

Before SEITZ, WEIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Plaintiffs, the Trustees of the Jointly Administered Fund, Local 945 International Brotherhood of Teamsters Pension Fund ("trustees"), appeal from an order of the district court granting summary judgment in favor of the defendants and in consequence denying plaintiffs' cross-motion for summary judgment. Defendant Browning-Ferris Industries of Elizabeth, New Jersey, Inc. ("the employer") is the sole appellee. This court has jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

I.

Those facts which are relevant to our decision and which are clear from the parties' stipulation of facts are as follows. In approximately 1960, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Local 945 ("union") obtained recognition as the employee representative of the employer's precedessor ("predecessor"). In 1966 or 1967, the predecessor entered into an oral agreement with the secretary-treasurer of the union, pursuant to which the predecessor was "permitted" to establish an employer pension plan for all its employees "if it was better than" the Local 945 International Brotherhood of Teamsters Pension Fund ("union pension fund"). In January of 1967, the predecessor adopted its own employer pension plan.

The predecessor joined the New Jersey Municipal Contractors Association ("association") at some time prior to July 1, 1969. Since that date, the association and the union have negotiated successive three year multi-employer master collective bargaining agreements ("collective bargaining agreements"). The parties do not suggest the existence of any agreements relevant to this appeal other than the above-mentioned oral agreement and the successive collective bargaining agreements between the association and the union.

Each of the collective bargaining agreements provides that participating member employers pay into the union pension fund "a sum not to exceed" a dollar amount that is stated in each agreement "per month for each employee ... who is a member of the Union." These agreements likewise provide that participating member employers pay to the Local 945 Teamsters Welfare Fund ("welfare fund"), for each employee who is a union member, "a sum not to exceed" a separate dollar amount that also is stated in each agreement. Clauses in both the pension fund plan and the welfare fund plan provide that "[t]he amount of contributions payable by each Employer shall be determined from time to time in

accordance with and subject to the terms of the collective bargaining agreement."

In 1972, the employer acquired the stock of the predecessor. The predecessor had never made any payments to the union pension fund, but it had made payments into the welfare fund equal to the dollar amounts stated in the collective bargaining agreements for that fund. In addition, the predecessor always maintained its own employer pension plan. Likewise the employer, after. acquiring the predecessor, paid nothing into the union pension fund, paid the dollar amount stated in the agreements into the welfare fund, and maintained its own employer pension plan. . The employer continued this practice throughout the entire period relevant to this appeal.

On October 26, 1981, the employer received a letter from the union's counsel demanding that, because the employer pension plan was not equal to the union pension fund, the employer must begin to make payments to the union pension fund.[1] Although it is not entirely clear on this record it appears that the parties agree that, prior to this demand, the union pension fund trustees never requested that the employer or the predecessor pay into the union pension fund. In contrast, on occasion the welfare fund trustees have requested that the employer pay into the welfare fund, apparently in instances where the employer's payments were past due. It also appears that no employee of either the employer or the predecessor ever applied to the union pension fund for benefits. In addition, neither the actuary nor the accountant for the union pension fund included the employees of the employer or its predecessor in the union pension fund's actuarial or financial calculations.

The employer did not comply with the demand to pay into the union pension fund. The trustees then filed this lawsuit in the district court seeking payments into the union pension fund that they allege are due under the successive collective bargaining agreements beginning July 1, 1978, and

July 1, 1981, respectively. On cross-motions for summary judgment the district court granted judgment in favor of the employer. This appeal followed.

## II.

The district court relied on alternative grounds in granting summary judgment in favor of the employer. First, the court relied on traditional notions of contract law in construing the language of the master collective bargaining agreements. It believed the language requiring an employer to pay into the union pension fund "a sum not to exceed" the dollar amount stated in the agreement is "inherently vague and indefinite," and it reasoned that the amount could be "nothing, the maximum or anything in between." Thus, the district court concluded that the clause in the collective bargaining agreements dealing with the payments to be made into the union pension fund was too vague to be enforceable.

Second, the district court analyzed the parties' course of conduct. The court recognized, as the facts demonstrate, that prior to the demand made by the union's counsel in 1981 the parties did not expect that the employer would pay into the union pension fund. The district court concluded from this that the employer had no legal obligation to pay into the fund.

The trustees contend that both of the district court's conclusions are erroneous because an analysis of the language of the collective bargaining agreements in light of the conduct of the parties demonstrates that the agreements were intended to create an obligation to pay into the union pension fund the full dollar amount stated in those agreements. Moreover, the trustees argue that an oral modification of a written obligation to pay into a union pension fund is invalid and that, therefore, the oral agreement here and the parties' conduct in furtherance thereof are insufficient to relieve the employer of its written obli-

---

1. We express no opinion as to whether the union's counsel, as opposed to the trustees' counsel, was the appropriate person to make this demand.

gation. The trustees thus conclude that the district court's grant of summary judgment in favor of the employer should be reversed, and summary judgment should instead be granted in their favor.

The trustees support their position by noting that the employer has always paid the full dollar amount stated in the collective bargaining agreements into the welfare fund, and that the relevant language in the agreements creating the obligation to pay into the welfare fund is identical to the language that speaks to the union pension fund. This court held in *Steel Workers v. Crane Company*, 605 F.2d 714, 719–20 (3d Cir.1979), that parallel language in a collective bargaining agreement should be construed in a parallel fashion. Thus the trustees argue that since the ambiguous language created an obligation to pay into the welfare fund it likewise must have created an obligation to pay into the union pension fund.

In addition, the trustees maintain that the facts suggesting that the parties did not expect the employer to pay into the union pension fund can only be explained as a consequence of the oral agreement between the union and the predecessor. They cite *Lewis v. Seanor Coal Co.*, 382 F.2d 437 (3d Cir.1967), *cert. denied*, 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968), as authority for the proposition that such oral modifications of written obligations to pay into union pension funds are invalid under section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (1982).

In the *Lewis* case, this court explained that section 302 "prohibited in broad terms, with certain narrow exceptions, both the payment of anything of value by an employer and its receipt by a representative of any of his employees." *Id.* at 442. Our court noted, however, that section 302(c)(5) permitted employers to pay into certain trusts, such as the pension fund in this case, if, among other things, "the detailed basis on which such payments are to be made is specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B). We observed that the rationales for section 302 and the quoted exception therein are the prevention of corruption and the protection of employee expectations. We reasoned that these rationales would be undermined if oral agreements were effective to modify the requisite written agreements. Therefore, we held that oral modifications of written agreements to pay into union employee benefit funds are invalid as violative of section 302. *See also Maxwell v. Lucky Construction Company*, 710 F.2d 1395 (9th Cir.1983) (fairness does not save an oral modification under section 302(c)(5)).

The employer contends, however, that the trustees are incorrect in their conclusion that the language of the collective bargaining agreements created obligations to pay into the welfare fund and the union pension fund. It maintains that the district court correctly concluded that the language "a sum not to exceed" a stated dollar amount is too vague to create any obligation to pay into either fund. The employer argues that it is not the written agreements, but rather it is the conduct of the parties that created the obligation to pay into the welfare fund. The employer argues further that the conduct of the parties created no such obligations with respect to the union pension fund. It follows, in the employer's view, that *Crane* only demonstrates that in this case neither the welfare fund clause nor the union pension fund clause created any obligations.

Moreover, the employer argues, the *Lewis* case is not controlling because it only bars oral modifications of written agreements. If there is no written obligation to pay into the union pension fund, then there is obviously no obligation of any kind to make such payments in this case. Thus, the employer concludes that the district court's grant of summary judgment in its favor was correct and should be affirmed.

■ It is true, of course, that the language "a sum not to exceed" creates an ambiguity with respect to the amount that an employer must pay into the pension fund. Since the construction of a collective

bargaining agreement is a question of federal law, however, the effect of such an ambiguity only can be ascertained by applying federal law principles. *Walsh v. Schlecht*, 429 U.S. 401, 407, 97 S.Ct. 679, 684, 50 L.Ed.2d 641 (1977). These principles must be "fashion[ed] from the policy of our national labor laws." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957).

We have carefully considered the arguments of the trustees and the employer. We conclude that the language of the collective bargaining agreements, read against the evidence of the parties' conduct taken as a whole, shows that the written agreements were intended to create obligations to pay the amounts stated therein into both the welfare fund and the union pension fund. Under *Lewis*, the oral agreement between the union and the predecessor is ineffective to modify that obligation. Therefore, the district court erred in granting summary judgment in the employer's favor and in failing to grant the trustees' cross-motion for summary judgment.

*Crane* mandates that the welfare fund clause and the union pension fund clause be read in a parallel fashion. It follows that either the collective bargaining agreements created written obligations as to both funds or they created written obligations as to neither. Were we to conclude that the collective bargaining agreements created no written obligation to pay into either fund then all of the employer's payments into the welfare fund would have been in violation of the requirement under section 302(c)(5) of the Labor Management Relations Act that any obligation to pay into such funds must be reduced to writing. *See supra.* Federal labor policy does not permit us to reach such a conclusion where a contrary construction of the agreements is logically acceptable. *Cf. Walsh v. Schlecht*, 429 U.S. at 408, 97 S.Ct. at 685 (1977) (ambiguously worded collective bargaining agreements "should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable").

█ Under the employer's view that the agreements created no obligation to pay into the union pension fund, the position adopted by the district court, one must believe that the oral agreement between the union and the predecessor was not intended to impact on the parties' rights and obligations under the collective bargaining agreements. Furthermore, the employer's approach would require us to believe that the employer and its predecessor began paying into the welfare fund even though it had no legal obligation to do so, and that the legal obligation to pay arose only as a consequence of the pattern of initially gratuitous payments. We find this explanation of the parties' conduct to be most unlikely. Therefore, mindful of the legal principles to be applied in this context, we hold that the language of the collective bargaining agreements, ambiguous though it may be, created the legal obligation to pay into the union pension fund the dollar amounts stated in the agreements. The facts demonstrating that the parties never expected that the employer would pay into the union pension fund can best be understood as a consequence of the invalid oral agreement.

The district court's grant of summary judgment in favor of the employer will be reversed. The district court will be directed to enter summary judgment in favor of the trustees in such amount as it determines to be appropriate, after first deciding as a matter of law whether the payments heretofore made by the employer to its own pension plan are relevant in calculating that amount.