**LIBERTY LEASING CO., Plaintiff,**

v.

**Jenny Lin MACHAMER, Defendant.**

**No. 96 CV 00859.**

United States District Court,
S.D. Ohio,
Eastern Division.

May 28, 1998.

Rex A. Littrel, Benesch, Friedlander, Coplan & Aronoff, Columbus, OH, for Liberty Leasing Co.

Gregory Donald May, Columbus, OH, for Jenny Lin Machamer.

## OPINION AND ORDER

MARBLEY, District Judge.

### INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (doc. 6). Plaintiff, Liberty Leasing Company, filed this action against Defendant, Jenny Lin Machamer, seeking to recover on two guarantees executed by Defendant on behalf of her husband's businesses. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**.

### FACTUAL BACKGROUND

Defendant's husband, James E. Machamer ("Machamer"), was the president and sole shareholder of two companies, MTI of Denbeigh, Inc. ("Denbeigh") and MTI at Kemp River, Inc. ("Kemp River"), engaged in the business of automotive service. Starting in November, 1993, Machamer began negotiating with Plaintiff to lease commercial automotive service equipment for his companies. To demonstrate that he and his companies possessed the financial resources to meet the lease obligations, including sufficient assets as security for the equipment, Machamer presented Plaintiff with various personal financial information, such as tax returns and financial statements from his companies.

Plaintiff reviewed Machamer's information and determined that neither he nor his companies had adequate financial resources to meet the lease obligations and secure the equipment. Plaintiff determined that the only significant asset listed on Machamer's personal financial statement was his personal residence, which was jointly owned by Machamer and Defendant, his wife. Based on its determination, Plaintiff asked Machamer to provide personal guarantees of his assets, including the residence, to secure the equipment leases. Plaintiff requested that Defendant also execute the guarantees because she was a joint owner of the personal residence and joint liability on the guarantees would be necessary to reach the residence in the event of a default.

On January 5, 1994, Defendant and Machamer executed two unconditional personal guarantees as security for the Denbeigh and Kemp River equipment leases. Under the terms of the guarantees, Defendant and Machamer agreed to "unconditionally guarantee . . . the full and prompt performance" of all obligations by the lessees, Denbeigh and Kemp River, and "payment when due of all sums presently and hereafter owing by [Denbeigh and Kemp River] . . . ." Furthermore, the guarantee agreements provided that all sums owed by the lessees would become "immediately due and payable" if the lessees defaulted, suspended business operations, or committed any act amounting to business failure.

On January 18, 1994, Machamer and his companies entered into two equipment lease agreements with an intermediary party, Total Lease Concepts, who subsequently assigned its rights in the leases to Plaintiff.[1]

Sometime in 1995, Denbeigh and Kemp River defaulted on the lease agreements by failing to make the payments due under the lease terms and ceasing to operate as businesses. As a result of the defaults, Plaintiff declared immediately due and payable all sums owed under the full terms of the leases. The outstanding amounts on the leases, approximately $181,871.87, are the subject matter of the Plaintiff's action.

## LEGAL ANALYSIS

### Standard For Summary Judgment

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (Summary judgment appropriate where the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

### The Equal Credit Opportunity Act as an Affirmative Defense to a Guaranty Obligation

The Equal Credit Opportunity Act ("ECOA") provides, in relevant part, "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . marital status." 15 U.S.C. § 1691(a)(1). A creditor may not require the

---

1. The leasing transaction actually took place through an intermediary party, Total Leasing Concepts, who subsequently assigned the lease rights to Plaintiff. By agreement of all parties, the leases were subject to the approval of Plaintiff prior to execution, and Plaintiff admits to determining that Machamer did not possess adequate financial resources to meet the lease obligations. Therefore, for the purposes of this analysis, Total Leasing Concepts' participation is irrelevant and we analyze the transaction as if it took place between Machamer, Defendant, and Plaintiff.

signature of a credit applicant's spouse, other than a joint application for credit, where the applicant qualifies independently under the creditor's standards for creditworthiness. 12 C.F.R. § 202.7(a).

Defendant argues that summary judgment against her is not appropriate because she has asserted ECOA as an affirmative defense to her guaranty obligations. Defendant alleges that Plaintiff required her to sign the guarantees despite the fact that her husband and his companies were independently creditworthy. Defendant further argues that, at a minimum, her husband's independent creditworthiness is a genuine issue of material fact which precludes summary judgment.

At issue is whether Plaintiff can assert ECOA as an affirmative defense under the theory that a commercial lease is "credit" as defined under ECOA.

"Credit," under ECOA, is defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d); 12 C.F.R. § 202.2(j) (definition of "credit" under related ECOA regulations as promulgated by the Board of Governors for the Federal Reserve System).

■■■■ The issue of whether a lease transaction constitutes "credit" under ECOA is most fairly determined by the terms of the leasing agreement, interpreted within the context of applicable state and federal law. The relevant inquiry is *whether the incremental payments constitute a contemporaneous exchange of consideration for the possession of the leased goods.* See, e.g., *Brothers v. First Leasing,* 724 F.2d 789, 798 (9th Cir.1984) (Canby, J., dissenting), *cert. denied,* 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984). Where the leasing agreement, or applicable law, provides for such a contemporaneous exchange, then the lessee cannot be said to "defer [the] payment of [a] debt" within the meaning of

ECOA. 15 U.S.C. § 1691a(d); 12 C.F.R. § 202.2(j).

In this case, the terms of the Denbeigh and Kemp River lease agreements provided for a contemporaneous exchange of consideration for the right of possession and use of the equipment. The lease agreements clearly provided that the lessees, Denbeigh and Kemp River, were obligated to make monthly payments, referred to as "rent payments" in Paragraph Four, in exchange for the "quiet use and enjoy[ment]" of the equipment.

Furthermore, the lessees were not obligated to pay the total lease amount in all circumstances under the lease agreements. Paragraph Fifteen of both agreements, which deal with Plaintiff's remedies in the event of a default by either of the lessees, provided that, upon default by the lessees, Plaintiff had the right to lease the equipment to another party in an effort to mitigate damages. If Plaintiff had done so, the lessees would have been liable only for "any accrued and unpaid rent" through the date that Plaintiff obtained possession of the equipment. Thus, it cannot be said, as a matter of law, that the lessees necessarily incurred a debt for which payment was deferred because, under at least one of the remedial scenarios set forth in Paragraph Fifteen, the lessees' financial obligation, or debt for the total lease price, would have been extinguished upon the surrender of possession of the equipment; i.e. the lessees' financial obligation was *contemporaneous* with possession of the equipment.

The Court's holding and conclusion is buttressed not only by the terms of the lease agreements, but also by the provisions of the Uniform Commercial Code ("UCC") governing commercial lease transactions, which has been adopted by both Ohio and Iowa.[2] As the comments to § 2A–529 of the UCC make clear, absent a lease term to the contrary, a lessor generally may not maintain an action for full unpaid rent unless the lessee maintains possession of the leased goods for that term. *See* Ohio Rev.Code § 1310.75 (Ohio version of § 2A–529); Iowa Code

---

2. This is a diversity lawsuit governed by the substantive laws of Ohio. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, the leasing agreements provide that the laws of Iowa will govern interpretation of the lease provision where necessary. The laws of both states are in agreement that a lessee's obligation for rent payments is contemporaneous with a lessee's possession of the leased goods.

§ 554.13529 (Iowa version of § 2A–529). This requirement demonstrates that a lessee's financial obligation for the total lease price under a lease agreement is concomitant with the lessee's right to possess the leased good for that term. Thus, even in default, a lessee cannot be said to "defer the payment of a debt," because the debt obligation is *contemporaneous* with the lessee's possession.

Defendant has neither argued nor adduced any evidence to demonstrate that the lease payments constituted a deferred payment of debt. Furthermore, Defendant has not established that the sum total of the lease payments constituted a "debt." The Defendant takes the position that a commercial lease is a "debt" which involves "deferred payments." The authority on this issue is sparse, as the Court was able to find only one case where a court held that a lease fell within the ECOA definition of "credit." [3] In *Brothers, supra,* a plaintiff brought suit under ECOA against a car leasing company for requiring her husband to be included on a car lease application. The sole issue before the court was whether ECOA applied to consumer leases. Based on the fact that ECOA is part of the Consumer Credit Protection Act and related to the Consumer Leasing Act, the court held that ECOA applies to consumer leases. *Brothers,* 724 F.2d at 796. This narrow holding was premised on the court's finding that the car lease was a credit transaction as defined in ECOA:

> The ECOA defines credit as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d) (1982). Under the terms of the lease that Brothers applied for, she would have been obligated to pay a total amount of $16,280.16. Payment of that debt would have been deferred, and [the plaintiff] would have been required to

make 48 monthly installment payments of $339.17.

*Id.* at 793 n. 8.

This Court explicitly rejects the *Brothers* court holding that, as a matter of law, a lease obligation is "credit" as defined in ECOA. The *Brothers* court's reasoning that the car leasing transaction was "credit"—because the defendant in that case would have granted the plaintiff the right to "incur [a] debt[ ]," the obligation to pay the total lease amount, and "defer its payment" by requiring the total lease amount to be paid in installments—is inapposite to the express terms of the Denbeigh and Kemp River leases, which, as discussed above, provided for remedial scenarios where the lessees' financial obligation to Plaintiff was extinguished upon surrender of possession. Furthermore, the Court is persuaded by the cautionary words of Judge Canby's dissent in *Brothers* regarding the scope of the majority's holding:

> The contention [that the car leasing transaction is a "credit transaction"] is not inherently illogical, but it proves too much. It means that *every lease* is a credit transaction within the meaning of the Equal Credit Opportunity Act. The majority's actual holding is that the Equal Credit Opportunity Act applies to *consumer* lease transactions. Yet there is nothing in the majority's rationale that confines the coverage of that Act to consumer lease transactions... The interpretation that effectuates the intent of Congress, I submit, is that "credit transactions" do not include leases, and that leases are not deferred debts but payments (normally in advance) for *contemporaneous use.*

*Id.* at 797–98 (emphasis added) (footnote omitted).

This Court also relies upon the 1985 Final Official Staff Interpretation issued by the Board of Governors for the Federal Reserve, the agency responsible for promulgating and enforcing the ECOA regulations. In that

---

**3.** In *Ferguson v. Park City Mobile Homes,* 1989 WL 111916 (N.D.Ill.1989), the court denied defendant's Motion to Dismiss, holding that the language of ECOA was broad enough to encompass a claim for a mobile home lease. However, the court in *Ferguson* failed to take into account

the 1985 final rule by the Board of Governors for the Federal Reserve which stated, unequivocally, that leases should not be considered under ECOA. For this reason, the Court does not find *Ferguson* to be persuasive authority.

Staff Interpretation, the Board of Governors expressly rejected the holding in *Brothers* that ECOA was enacted to encompass lease transactions. In issuing its interpretation of, and revisions to, Regulation B under ECOA, which includes one of the definitions of "credit," [4] the Board of Governors said the following about the holding in *Brothers:*

> In the review of Regulation B, the Board also addressed the issue of whether to establish a uniform rule extending ECOA coverage to consumer leases. In Brothers v. First Leasing ... the U.S. Court of Appeals for the Ninth Circuit held that consumer leases are defined by the Consumer Leasing Act are subject to the ECOA....
>
> On policy grounds there is some support for a regulatory amendment to cover lease transactions. It seems inconsistent to allow lessors to consider marital status, sex, and other characteristics while creditors are prohibited from doing so. In addition, some lease transactions are similar in many ways to credit transactions; indeed, financing leases, or open-end leases, have been held to be functionally equivalent to credit.
>
> Nevertheless, the Board believes that the Ninth Circuit interpreted the ECOA's definition of credit too broadly when it concluded in the *Brothers* case that the granting of a lease is an extension of credit. The Congress has consistently viewed lease and credit transactions as distinct and mutually exclusive financial transactions and has treated them separately under the Consumer Credit Protection Act....

**4.** The definition of "credit" under ECOA can be found in 15 U.S.C § 1691a(d) and 12 C.F.R § 202.2(I). Both definitions are substantively the same.

**5.** This Court is cognizant that the alleged discriminatory acts of Plaintiff are similar in nature to those prohibited by ECOA in credit transactions. In addition, the issue presented here is a difficult one because lease transactions seem to be a hybrid of both rental and credit transactions. *See* Board of Governors Final Official Staff Interpretation, 50 F.R. at 48020 ("[S]ome lease transactions are similar in many ways to credit transactions...").

In light of those considerations, the Board has not applied Regulation B to leasing. 50 F.R. 48018, 48019–20 (citations omitted).[5] Indeed, it is well-established that an agency's construction of its own regulations is entitled to substantial deference from the courts, *Martin v. Occupational Safety and Health Review Commission,* 499 U.S. 144, 150, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991); *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986); *Wolpaw v. Commissioner of Internal Revenue,* 47 F.3d 787, 790 (6th Cir.1995), and this Court accords deference to the Board of Governors in its interpretation of the ECOA regulations.

As Judge Canby stated in his dissent in *Brothers,* the rationale of the majority tends to prove too much. Following the majority's finding that lease payments are deferred payments of debt would arguably lead to the conclusion that any contract which involved installment payments would become "credit" under ECOA. That rationale, however, was expressly rejected in *Shaumyan v. Sidetex Co., Inc.,* 900 F.2d 16 (2d Cir.1990). There, the defendant required one of the plaintiffs, Mrs. Shaumyan, to co-sign a home improvement contract with her husband. The contract provided that the plaintiffs would pay for the work in five (5) installments, the final payment coming due upon completion of the work. Plaintiffs sued to recover for damages from defendant under ECOA, alleging that the home improvement contract was a "credit transaction" under ECOA because the contract involved a debt with deferred payments. The Second Circuit rejected the plaintiffs' argument and affirmed the district court's grant of summary judgment. The court found that the incremental payment

> However, the overriding characteristic of a lease transaction is the contemporaneous exchange of consideration for possession and use, which is consistent with the Board of Governors' interpretation that lease transactions are not within the scope of ECOA. The harshness of this ruling, as it relates to Defendant, has not escaped the Court. But no matter how desirable the result in *Brothers,* it is a result that only Congress can achieve. This Court is bound by the language of the statute, and must show deference to the applicable regulations, and the official staff interpretations of those regulations.

schedule was not the equivalent of a deferred payment of a debt obligation, but rather incremental payments which "were substantially *contemporaneous* with [the defendant's] performance under the contract." *Shaumyan*, 900 F.2d at 18.

## CONCLUSION

For the foregoing reasons, the Court finds that the Denbeigh and Kemp River lease agreements are not "credit" within the scope of ECOA. Therefore, ECOA is not applicable to the present matter, and does not constitute a valid affirmative defense to Plaintiff's claim. The Court hereby **GRANTS** Plaintiff's Motion for Summary Judgment. Judgment is rendered for Plaintiff on all claims.

**IT IS SO ORDERED.**