**FRONTIER LEASING
CORPORATION,**
Plaintiff,

v.

**GRIFFIN PETROLEUM INC. and
Steven H. Griffin, Defendants.**

No. 4–01–CV–90242.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 24, 2001.

Mark D. Walz, Des Moines, Iowa, for Plaintiff.

Jason D. Walke, Des Moines, Iowa, Louis Jay Miller, Memphis, TN, for Defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff, Frontier Leasing Corporation, brings this action in diversity against defendants Griffin Petroleum, Inc, and Steven H. Griffin, asserting a breach of contract claim against Griffin Petroleum, Inc. and a breach of guaranty claim against Steven H. Griffin. The Plaintiffs have brought two motions before the court, for summary judgment and attorney's fees. For the reasons explained herein, those motions are granted.

### I. Facts

On February 24, 2000, Frontier Leasing Corporation ("Frontier") entered into a Master Equipment Lease Agreement ("Lease No. 40462") as the lessor of business equipment to Griffin Petroleum, Inc. ("Griffin Petroleum"). In addition to the equipment leased under that agreement, a schedule of eleven other business equipment leases were subsequently negotiated on March 8, 2000 and March 13, 2000 that were expressly governed by Lease No. 40462. An entirely separate lease for business equipment, ("Lease No. 40450") was also negotiated on March 13, 2000 between Frontier and Griffin Petroleum. Steven H. Griffin acted as a guarantor for all of the aforementioned leases.

Both leases provide for monthly payments by Griffin Petroleum and a 6% fee on any payment made more than five days late. The leases also have remedy provisions that enable the lessor to take any or all of a series of enumerated actions in the event of default.[1] Both leases contain accelerated payment remedy provisions that require discounting for present-value and accelerated payment remedy provisions that do not.

On January 19, 2001, Steven Griffin was sent a letter by Suzanne Schoofs, Frontier's Director of Litigation, informing him that Griffin Petroleum was delinquent and that it risked default, acceleration of rents, and litigation. On April 18, 2001, Frontier served Griffin Petroleum and Steven Griffin a complaint, seeking accelerated rental payments, other incidental fees, and attorney's fees.[2] On June 22, 2001, Frontier

---

1. Lease No. 40462 states in Paragraph No. 12 Default and Remedies that Frontier may:

   (i) recover from Lessee, as liquidated damages for loss of a bargain and not as a penalty, as to any or all Leases, an amount equal to the present value of all Monthly Rent to be paid by Lessee during the remaining Minimum Term or any extended term then in effect, discounted at the rate of 5% per annum, which amount shall be accelerated and become immediately due and payable; (ii) sue for and recover all rents and other amounts due or to become due with respect to any or all items of Equipment ...

   Similarly, Lease No. 40450 states in Paragraph No. 15, Remedies, that Frontier may: (d) declare immediately due and, payable all sums due and to become due hereunder for the full term of the Lease (including any renewal or purchase options which Lessee has contracted to pay) ... (f) ... with or without terminating this Lease, recover from Lessee damages, not as a penalty, but herein liquidated for all purposes and in an amount equal to the sum of (i) any accrued and unpaid rent as of the date of entry of judgment in favor of the Lessor plus interest at the rate of fifteen percent (15%) per annum or the maximum rate provided by state law; (ii) the present value of all future rentals reserved in the Lease and contracted to be paid over the unexpired term of the Lease discounted at a rate equal to the discount rate of the Federal Reserve Bank of Kansas City as of the date of entry of judgement in favor of Lessor plus one percent (1%) ...

2. Paragraph 22 of Lease No. 40450 calls for arbitration of all disputes arising out of that particular lease, but since neither party moved for such arbitration, the Court deems that right under Lease No. 40450 waived. Furthermore, efficiency dictates that all thirteen leases are handled together in one disposition.

moved for summary judgment for damages of $685,978.41.[3]

## II. Summary Judgment Standard

The purpose of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Summary judgment "allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to [conserve] scarce judicial resources." *Id.*

The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence nor make credibility determinations, rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986), *cited in Handeen v. Lemaire*, 112 F.3d 1339, 1345 (8th Cir. 1997); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed. R.Civ.P. 56(c), (e); *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis added). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## III. Discussion

In order to collect the damages it seeks on its summary judgment motion, the plaintiff in this case, Frontier, must demonstrate there is no genuine issue of material fact regarding the defendants' liability for default on the leases in question or the damages that the defendants owe as a consequence of their default. The Court finds that there are no issues of material fact on liability or damages; however, it also finds that the plaintiffs incorrectly calculated those damages under the terms of the lease and Iowa law, which governs both leases.[4] As discussed below, this decision awards damages based on a proper

---

3. Plaintiff Frontier submitted a different figure of $683,021.72 when it attempted to substantiate its damages in its reply brief.

4. Paragraph 23 of Lease No. 40450 and Paragraph 19 of Lease No. 40462.

calculation of the present discounted value of the leases' accelerated rental payments.

The Defendants admit that "[a]mong other defaults, Griffin Petroleum is in monetary default under each of the thirteen (13) leases for non-payment of the lease payments called for in the Leases."[5] The Defendants' only defense to the Plaintiff's claim against them for liability is that the remedy of accelerated rental payments is not a reasonable calculation of liquidated damages as required by Iowa law. In making this assertion, the Defendants ignore *Aurora Business Park Associates, L.P. v. Michael Albert, Inc.*, 548 N.W.2d 153 (Iowa 1996), cited by the Plaintiff, which upholds an acceleration clause, and Iowa's adoption of the Uniform Commercial Code, Iowa Code § 554.13529(1)(a)(ii), not cited by the Plaintiff, which specifically allows the recovery of "the present value as of the same date of the rent for the then remaining lease term of the lease agreement." Instead, the Defendants offer a ruling by the Court of Appeals of Georgia, *Carter v. Tokai Financial Services, Inc.*, 231 Ga.App. 755, 500 S.E.2d 638 (Ga.Ct. App.1998) which, applying Georgia case law, held that an acceleration clause was unreasonable because the plaintiffs had repossessed the equipment and thus a payment of accelerated rents would constitute a double recovery. While Iowa law also bars such double recovery,[6] the Defendants have not asserted that any repossession has ever taken place nor is the Court aware of any repossession.

The Defendants do raise a valid point regarding the substantiation of the Plaintiff's damages. The Plaintiff did not calculate the damages for the Court until its Reply brief. Furthermore, the Plaintiff failed to ever adequately explain or document various incidental costs, such as NSF fees, inspection fees, and residuals, other than submitting its own generated invoices that simply list these items.

The Defendants also raise the critical point that the Plaintiff failed to discount to present-value the accelerated rents in the lease. The Defendants raise this point in a Reply brief responding to the Plaintiff's Reply brief, filed contrary to Local Rule 7(g).[7] The Defendants cite *CHR Equipment Financing, Inc. v. C & K Transport, Inc.*, 448 N.W.2d 693 (Ia.App.1989) (refusing to overturn discounting to present-value for a lease where there is no specific acceleration provision). While the Defendants' citation is untimely and somewhat off point, it is also unnecessary, because there are provisions for discounting to present-value made in the leases themselves.

If the Plaintiff had addressed this point, it might have argued that the lease is properly construed to give the lessor an election of remedies upon default, where two of the possible remedies are the acceleration of rents without discounting to present value, represented by clause 15(d) in Lease No. 40450 and clause 12(ii) in Lease No. 40462, and an acceleration of

---

5. In Defendants' Response to Paragraph 3 of the Plaintiff's Statement of Undisputed Facts, which makes the above statement, the Defendants admit.

6. *See* Iowa Code § 554.13529 Comment 1 ("There is no general right in a lessor to recover the full rent from the lessee upon holding the goods for the lessee."); *Liberty Leasing Co. v. Machamer*, 6 F.Supp.2d 714 (S.D.Ohio 1998)(*citing* Iowa Code, "absent a lease term to the contrary, a lessor generally

may not maintain an action for unpaid rent unless the lessee maintains possession of the leased goods for that term.")

7. Under Local Rule 7(g) for the Southern District of Iowa, a *"moving party* may, within 5 court days after a resistance to a motion is served, filed a reply brief ..." (emphasis added). The Defendants, the non-moving party, filed their "Reply" brief three weeks after the Plaintiff's Reply was filed properly under Local Rule 7(g).

rents with discounting to present value, represented by clause 15(f) in Lease No. 40450 and clause 12(i) in Lease No. 40462. The Court cannot construe the leases in this manner though.

■ First, if the remedies were structured in this way, the clauses requiring discounting to present-value would have no purpose, since the lessor would always choose the clause that does not require discounting to present-value. It is an established principle of contract construction that the clauses should be construed in such a way as to give all of them meaning. *Dickson v. Hubbell Realty Co.*, 567 N.W.2d 427, 430 (Iowa 1997) ("[b]ecause we give effect to the language of the entire contract, it is assumed that no part of it is superfluous and an interpretation that gives a reasonable meaning to all terms is preferred to one that leaves a term superfluous or of no effect.") (*citing Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991)). In addition, "[w]hen there are ambiguities in the contract, they are strictly construed against the drafter." *Dickson*, at 430 (*citing Iowa Fuel* at 863). In this case, the forms used for the Leases were clearly provided by the Plaintiff.

■ More importantly, another established principle of contract construction requires the Court to construe these leases in a manner consistent with the law. *Walsh v. Schlecht*, 429 U.S. 401, 408, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977)("a general rule of construction presumes the legality and enforceability [sic] of contracts, (cite omitted) ambiguously worded contracts should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable.")(*citing* 6A A. Corbin, Con-

tracts ss 1499, 1533 (1962)). Iowa Code § 554.13529(1)(a)(ii) specifically allows recovery of "*the present value* as of the same date of the rent for the then remaining lease term of the lease agreement." (Emphasis added.) As the canon of construction holds, "expressio unius est exclusio alterius," the expression of one thing implies the exclusion of the other. *State of Iowa v. Robinson*, 618 N.W.2d 306, 321 (Iowa 2000). The Uniform Commercial Code and Iowa law clearly allow the acceleration of rents *with* discounting to present-value. This strongly implies that the employment of such acceleration clauses without discounting to present-value is disfavored.

■ An acceleration clause without discounting to present value would also run afoul of the statutory and common law principle that liquidated damages should be "reasonable in light of the then anticipated harm caused by the default or other act ·or omission." Iowa Code § 554.13504(1). An acceleration clause that does not discount to present-value would clearly enable a lessor to earn interest on early rent payments that the lessor would not earn if no default occurred. As the Iowa Supreme Court stated in *Aurora*, "[i]n general, the purpose behind the allowance of damages for breach of a contract 'is to place the injured party in the position he or she would have occupied if the contract had been performed.' " *Aurora*, at 157 (*quoting Macal v. Stinson*, 468 N.W.2d 34, 36 (Iowa 1991)).[8] Thus, such a clause would generate damages that are unreasonably large and hence a penalty, which is disallowed under Iowa law. *Rohlin Constr. Co. v. City of Hinton*, 476 N.W.2d 78, 79 (Iowa 1991).

The proper construction of the lease clauses that allow for the acceleration of

---

8. The judgment that the Iowa Supreme Court upheld in *Aurora* is one where the trial court acted to reduce future accelerated rent pay-

ments to their present value; however, this discounting is not addressed in the decision itself. *Aurora*, at 155.

rental payments but do not mention present-value discounting is that they are procedural in nature. Clause 15(d) in Lease No. 40450 allows the lessor to "declare" the time at which the rental payments are accelerated, while clause 12(ii) in Lease No. 40462 enables the lessor to sue.

The clauses in the lease agreements that provide for present-value discounting also provide interest rates for use in that calculation. In Lease No. 40450, that interest rate is the discount rate at the Federal Reserve Bank of Kansas City plus 1%, which the Court takes judicial notice as having been 5% as of April 28, 2001, the day the Plaintiff's Complaint was served on the Defendants.[9] In Lease No. 40462, the interest rate is simply given as 5%. Thus, a monthly interest rate of 0.4167% can uniformly be used for all leases to discount future rental payments to present value.[10] In addition to the accelerated rental payments, the Plaintiff is entitled to 6% penalties, in accordance with Paragraph 4 of Lease 40450 and Paragraph 3 of Lease 40462, on all unpaid rents for January through August, 2001. Thus, the Plaintiff is entitled to $620,061.07 in accelerated rental payments, overdue rental payments, and late fees on the thirteen leases.[11] The Plaintiff is also entitled to its attorney's fees, of $3280.50. Because the Plaintiff failed to adequately substantiate other incidental fees, they are not included in this judgment.

## IV. Order

The Court hereby grants Plaintiff's motions for summary judgment and attorney's fees on both claims and awards the Plaintiff $623,341 .57. The Plaintiff may move to amend the judgment under Rule 59 of the Federal Rules of Civil Procedure if it can provide documentation of its other incidental costs.

IT IS SO ORDERED.

## APPENDIX
### CALCULATION OF ACCELERATED RENT PAYMENTS AT PRESENT DISCOUNTED VALUE

| Lease Number | Monthly Payment | Due Date | Payment Due | Late Fee/ Discount | Judgment Value |
|---|---|---|---|---|---|
| 40450 | $ 1,040.00 | January, 2001 | $ 12,713.19 | 1.06 | $ 13,475.98 |
| 40462 | $ 858.00 | February, 2001 | $ 12,713.19 | 1.06 | $ 13,475.98 |
| 4046201 | $ 864.00 | March, 2001 | $ 12,713.19 | 1.06 | $ 13,475.98 |
| 4046202 | $ 868.00 | April, 2001 | $ 12,713.19 | 1.06 | $ 13,475.98 |
| 4046203 | $ 819.35 | May, 2001 | $ 12,713.19 | 1.06 | $ 13,475.98 |
| 4046204 | $ 867.00 | June, 2001 | $ 12,713.19 | 1.06 | $ 13,475.98 |
| 4046205 | $ 1,221.00 | July, 2001 | $ 12,713.19 | 1.06 | $ 13,475.98 |
| 4046206 | $ 949.99 | August, 2001 | $ 12,713.19 | 1.06 | $ 13,475.98 |
| 4046207 | $ 907.00 | September, 2001 | $ 12,713.19 | 1 | $ 12,713.19 |
| 4046208 | $ 728.85 | October, 2001 | $ 12,713.19 | 0.995850 | $ 12,660.43 |
| 4046209 | $ 1,764.00 | November, 2001 | $ 12,713.19 | 0.991718 | $ 12,607.90 |
| 4046210 | $ 883.00 | December, 2001 | $ 12,713.19 | 0.987602 | $ 12,555.58 |
| 4046211 | $ 943.00 | January, 2002 | $ 12,713.19 | 0.983504 | $ 12,503.48 |
| | | February, 2002 | $ 12,713.19 | 0.979423 | $ 12,451.59 |
| Total Monthly Payment | $ 12,713.19 | March, 2002 | $ 12,713.19 | 0.975359 | $ 12,399.92 |
| | | April, 2002 | $ 12,713.19 | 0.971311 | $ 12,348.46 |
| Accelerated Rental | | May, 2002 | $ 12,713.19 | 0.967281 | $ 12,297.22 |
| Payments, Owed Rent, | | June, 2002 | $ 12,713.19 | 0.963267 | $ 12,246.19 |
| and Late Fees: | $ 620,061.07 | July, 2002 | $ 12,713.19 | 0.959269 | $ 12,195.37 |

9. The Plaintiffs have not provided the Court with any documentation of any official notice of acceleration of rental payments before the service of the Complaint.

10. Annual interest rate of 5% divided by 12 months yields .4167%.

11. All calculations are shown in a spreadsheet in the Appendix.

| | | | |
|---|---|---|---|
| August, 2002 | $ 12,713.19 | 0.955289 | $ 12,144.77 |
| September, 2002 | $ 12,713.19 | 0.951324 | $ 12,094.37 |
| October, 2002 | $ 12,713.19 | 0.947377 | $ 12,044.18 |
| November, 2002 | $ 12,713.19 | 0.943445 | $ 11,994.20 |
| December, 2002 | $ 12,713.19 | 0.939530 | $ 11,944.43 |
| January, 2003 | $ 12,713.19 | 0.935632 | $ 11,894.86 |
| February, 2003 | $ 12,713.19 | 0.931749 | $ 11,845.50 |
| March, 2003 | $ 12,713.19 | 0.927883 | $ 11,796.35 |
| April, 2003 | $ 12,713.19 | 0.924032 | $ 11,747.40 |
| May, 2003 | $ 12,713.19 | 0.920198 | $ 11,698.65 |
| June, 2003 | $ 12,713.19 | 0.916379 | $ 11,650.10 |
| July, 2003 | $ 12,713.19 | 0.912576 | $ 11,601.76 |
| August, 2003 | $ 12,713.19 | 0.908789 | $ 11,553.61 |
| September, 2003 | $ 12,713.19 | 0.905018 | $ 11,505.67 |
| October, 2003 | $ 12,713.19 | 0.901263 | $ 11,457.92 |
| November, 2003 | $ 12,713.19 | 0.897523 | $ 11,410.38 |
| December, 2003 | $ 12,713.19 | 0.893798 | $ 11,363.03 |
| January, 2004 | $ 12,713.19 | 0.890089 | $ 11,315.87 |
| February, 2004 | $ 12,713.19 | 0.886396 | $ 11,268.92 |
| March, 2004 | $ 12,713.19 | 0.882717 | $ 11,222.15 |
| April, 2004 | $ 12,713.19 | 0.879054 | $ 11,175.58 |
| May, 2004 | $ 12,713.19 | 0.875406 | $ 11,129.21 |
| June, 2004 | $ 12,713.19 | 0.871774 | $ 11,083.03 |
| July, 2004 | $ 12,713.19 | 0.868156 | $ 11,037.03 |
| August, 2004 | $ 12,713.19 | 0.864554 | $ 10,991.23 |
| September, 2004 | $ 12,713.19 | 0.860966 | $ 10,945.62 |
| October, 2004 | $ 12,713.19 | 0.857393 | $ 10,900.20 |
| November, 2004 | $ 12,713.19 | 0.853835 | $ 10,854.97 |
| December, 2004 | $ 12,713.19 | 0.850292 | $ 10,809.93 |
| January, 2005 | $ 12,713.19 | 0.846764 | $ 10,765.07 |
| February, 2005 | $ 12,713.19 | 0.843250 | $ 10,720.40 |
| March, 2005 | $ 12,713.19 | 0.839751 | $ 10,675.91 |
| April, 2005 | $ 12,713.19 | 0.836266 | $ 10,631.61 |

The discount is calculated by dividing 1 by 1.004167 (the monthly interest rate) raised to the power of the number of months past September, 2001. The dollar amount for accelerated rental payments, owed rents, and late fees is simply the sum of the "Judgment Value" column on the far right.