

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2002

# Doyle v. Secretary Labor

Precedential or Non-Precedential:

Docket 00-1589

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Doyle v. Secretary Labor" (2002). *2002 Decisions.* Paper 222.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/222

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed March 27, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-1589 and 00-2035

SHANNON T. DOYLE

        Petitioner in No. 00-1589

v.

U.S. SECRETARY OF LABOR and U.S. DEPARTMENT OF
LABOR ADMINISTRATIVE REVIEW BOARD

        Respondents in No. 00-1589

HYDRO NUCLEAR SERVICES, INC.

        Petitioner in No. 00-2035

v.

THE SECRETARY OF LABOR, ADMINISTRATIVE REVIEW
BOARD, and THE UNITED STATES DEPARTMENT
OF LABOR

        Respondents in No. 00-2035

On Petitions for Review of Final Decisions and Orders of
the Secretary of Labor and Administrative Review Board
Case No. 89-ERA-22 (ALJ), Nos. 99-041, 99-042,
00-012 (ARB)

Argued January 15, 2002

BEFORE: SCIRICA, GREENBERG, and BRIGHT,*
Circuit Judges

(Filed: March 27, 2002)

        Stephen M. Kohn (argued)
        Kohn, Kohn & Colapinto
        3233 P Street, N.W.
        Washington, D.C. 20007-2756

         Attorneys for Petitioner in
        No. 00-1589 and Intervenor in
        No. 00-2035

        Peter Buscemi (argued)
        Thomas A. Schmutz
        David R. Lipson
        Morgan, Lewis & Bockius

1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Glen R. Stuart
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

Hope A. Comisky
Michael H. Rosenthal
Pepper Hamilton
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103

 Attorneys for Petitioner in
No. 00-2035

_____

* The Honorable Myron H. Bright, Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

Howard M. Radzely
Acting Solicitor of Labor
Steven J. Mandel
Associate Solicitor
Paul L. Frieden
Lois R. Zuckerman (argued)
Office of the Solicitor
United States Department of Labor
200 Constitution Avenue, N.W.
Suite N-2716
Washington, D.C. 20210

 Attorneys for Respondents

OPINION OF THE COURT

GREENBERG, Circuit Judge.

These matters come on before this court on consolidated
petitions for review of a May 17, 2000 Final Decision and
Order issued by the Administrative Review Board ("ARB")
acting on behalf of the United States Secretary of Labor and
United States Department of Labor, and of a March 30,
1994 Final Decision and Order of the Secretary. The
Secretary's decision and order determined that petitioner
Hydro Nuclear Services, Inc. ("Hydro") violated Section 210
of the Energy Reorganization Act of 1974 ("ERA"), 42 U.S.C.
S 5851, when it failed to hire petitioner-intervenor Shannon
T. Doyle because of his refusal to sign an authorization for
release of records including a release of liability provision.
The ARB's decision and order granted Doyle remedies of
$218,378 in back pay, $154,695 in front pay, $45,000 in
lost benefits, $80,000 in compensatory damages,
$290,127.47 in attorney's fees and costs, and prejudgment
and postjudgment interest on both the front and back pay.

In these proceedings Hydro contests the finding of liability while Doyle contends that the ARB should have awarded him a tax enhancement to compensate for the burden of receiving a lump sum award of back pay. For the reasons set forth below, we will grant Hydro's petition, set aside the Secretary's finding of liability, and vacate all

awards of damages, remedies, fees and costs. Therefore, we will dismiss Doyle's petition as moot.

I. BACKGROUND

A. Factual History

The factual synopsis we detail below is not controverted. Hydro,1 based in Moorestown, New Jersey, provided temporary workers to assist in the decontamination and maintenance of nuclear power plants. Hydro had a contract with the D.C. Cook nuclear power plant in Bridgeman, Michigan, to supply the plant with temporary and year-round decontamination technicians.

In the fall of 1988, Hydro recruited Doyle to work as a temporary senior decontamination technician during a planned refueling outage at the plant. The pay rate for this job was to be modest, $6.50 per hour with an enhancement for overtime and a $48.00 per diem allowance. As part of the routine screening process, Hydro required Doyle to take a series of psychological and drug tests and to complete a routine employment application that included Hydro's standard "Authorization for Release of Information and Records." In this regard, Hydro treated Doyle the same as all other job applicants, and Doyle does not claim otherwise. The authorization stated as follows:

> AUTHORIZATION FOR RELEASE OF INFORMATION
> AND RECORDS
>
> In accordance with the Privacy Act (5U.S.C. 552a), I, the undersigned expressly authorize any person, association, firm, company, criminal justice agency, Credit Extending Organizations, Schools, Doctors, or Hospitals, Department or agency of a City, County, or State Government, or of the Federal Government to release and furnish to Hydro Nuclear Services and its authorized representatives _____ any and all

---

1. In 1989, Hydro combined with two other subsidiaries of Westinghouse Electric Corporation under the name Westinghouse Radiological Services. Nevertheless, though technically Hydro no longer exists as a separate entity, we employ the name "Hydro" for the sake of simplicity.

information and records pertaining to me including, but not limited to, originals or copies of any documents, records, reports, transcripts, abstracts, military records, criminal records, or any other information.

Further, I hereby release and discharge Hydro Nuclear Services, their representatives, and their clients for whom the investigation is being performed and any organization listed above furnishing or receiving any information pertaining to me from any and all liability or claim as results [sic] of furnishing or receiving such information pursuant to this authorization.

Hydro Nuclear Services is authorized to utilize the information it obtains for the purpose of evaluation, my eligibility for clearance, allowing unescorted access to Nuclear Power Stations, as required by Government regulations.

A photo copy of this authorization shall be deemed an original and shall be accepted as such by any person or organization.

JA at 181.

Doyle refused to sign the authorization presented, asserting to Robert Booker, Hydro's Manager of Employee Relations, that the second quoted paragraph waived his right to file a charge under the ERA. Doyle's concern largely was attributable to his belief that his former employer, Alabama Power Company, against whom he had filed a "whistleblowing" claim, implicitly was included in the release. Doyle advised Booker of this claim, thus giving Hydro its first notice of it. Doyle opted to cross out the paragraph in question and sign the redacted version of the authorization.

Booker, however, informed Doyle that unless he signed the original version of the authorization, Hydro would be unable to tender him an offer of employment. Notwithstanding the caveat, Doyle refused to sign the full authorization. Hydro, in turn, chose not to hire Doyle, though it did compensate him for travel expenses and per diem rates as agreed.

5

B. Procedural History

On December 9, 1988, Doyle filed a pro se complaint with the Wage and Hour Division of the United States Department of Labor, alleging that Hydro violated the employee protection provisions of the ERA by refusing to hire him unless he signed the release. Hydro filed a response on January 26, 1989.

After an unsuccessful conciliation attempt and investigation, the Wage and Hour Division rejected the

claim, concluding that Hydro did not violate the ERA by ceasing to consider Doyle for potential employment once he refused to sign the full authorization because "[a]ll evidence indicates that Hydro Nuclear Services, Inc. terminated [Doyle's] employment solely because of [his] refusal to sign the firm's standard Privacy Act waiver form and not because of [his] prior admitted whistleblower activities" or engagement in other "protected activity under the Energy Reorganization Act." JA at 186.

Notified of his right to appeal and obtain a hearing on the merits, Doyle formally requested review by an administrative law judge. Hydro and Doyle submitted a stipulated record of fact and motions for summary decision pursuant to 29 C.F.R. SS 18.40 and 18.41.

On July 11, 1989, the administrative law judge issued his Recommended Decision and Order Granting Respondent's Motion for Summary Judgment indicating as follows:

> [Hydro] had a right to require all prospective employees to sign such a release in order to obtain all necessary information pertaining to an individual's post [sic] record. Since [Doyle] refused to accept this requirement I find that [Hydro] had a legal right to refuse to employ [Doyle]. Employers who hire workers for nuclear power plants must ensure the health and safety of the public by carefully screening all prospective employees. [Hydro] in requiring all employees including[Doyle] to sign its release was exercising an essential step in performing its duty of responsible investigation and screening of employees.

6

JA at 10-11.

The Secretary conducted a de novo review of the recommendation of the administrative law judge. Finally, on March 30, 1994, the Secretary issued a letter Final Decision and Order, rejecting the analysis of the administrative law judge and concluding that Hydro "violated the ERA when it refused to hire [Doyle] because he refused to sign the authorization form unless the release of liability paragraph was deleted." JA at 22. The Secretary ordered Hydro to reinstate Doyle with back pay, including interest.

In reaching his result the Secretary indicated that"[e]ven lawyers can disagree over the scope and effect of the language in question." He indicated, however, that:

> Giving the authorization form its most narrow reading, it would release [Hydro] and any other employer from whom [Hydro] obtained information about [Doyle] from any claim that the information had been provided or used to deny [Doyle] employment because of protected activities under the ERA. In other words, by signing the

>       form, [Doyle] would have waived his right to file a
>       complaint of illegal blacklisting under the ERA.

JA at 16-17 (footnote omitted).

The Secretary subsequently stated:

>       There can be little doubt that, if [Doyle] had signed the
>       authorization form, but [Hydro] refused to hire him
>       based on information from a previous employer about
>       [Doyle's] protected activities, and [Doyle] filed a
>       complaint under the ERA of discriminatory refusal to
>       hire, waiver of rights under the ERA could not be
>       raised by [Hydro] as a defense. Otherwise, any covered
>       employer could nullify the Act and Congressional intent
>       to protect public health and safety by prohibiting
>       retaliation against those who report potential safety
>       hazards in the construction and operation of nuclear
>       power plants.

JA at 19.

Hydro petitioned this court for review of the Secretary's decision and order on May 26, 1994. Thereafter, on August

24, 1994, we granted a joint motion of the Secretary and Hydro to remand the matter for further administrative proceedings to determine Doyle's remedy. On September 7, 1994, the Secretary, in turn, remanded the case to an administrative law judge.

After permitting additional discovery on the issue of damages, the administrative law judge conducted a hearing on December 14, 1994. The judge issued a Recommended Decision and Order on Damages on November 7, 1995, awarding Doyle back pay, front pay, compensatory damages, interest, attorney's fees, costs, and other equitable relief, including corrections to his personnel records. See JA at 44. With limited changes, the ARB, acting on behalf of the Secretary pursuant to 61 Fed. Reg. 19978, adopted those recommendations on September 6, 1996. See JA at 55-65.2 Subsequently, Doyle and Hydro respectively filed petitions for review with this court and with the United States Court of Appeals for the Sixth Circuit, which thereafter were consolidated and dismissed as premature. See JA at 708-713.

On November 26, 1997, the ARB remanded the case to an administrative law judge for further proceedings to resolve the open issues regarding the proper amount of damages to which Doyle was entitled. See JA at 66-71. The parties entered into a series of stipulations, following which an administrative law judge issued his Final Recommended Decision and Order on Damages on February 12, 1999, see JA at 100-11, and his Final Recommended Decision and Order Awarding Attorney Fees on November 15, 1999. See JA 114-29. On May 17, 2000, the ARB issued its Final

Decision and Order in this matter. See JA at 130-56.

On May 18, 2000, Hydro petitioned for review of the Final
Decision and Orders of March 30, 1994, and May 17, 2000,
to the United States Court of Appeals for the Sixth Circuit.
The following day, Doyle petitioned this court for review of
the Final Decision and Order of May 17, 2000 insofar as it

_____

2. The Board rejected the recommendations concerning front pay and
encouraged the parties to reach an agreement on the average hourly rate
for non-local decontamination workers in the nuclear industry during
the relevant period. See JA at 62.

provided for damages.3 On June 5, 2000, the Judicial Panel
on Multidistrict Litigation ordered the petitions consolidated
in this court. The Court of Appeals for the Sixth Circuit
then transferred the Hydro petition to this court on July 6,
2000, and we consolidated the proceedings on July 14, 2000.4

II. JURISDICTION

We have jurisdiction to review a final order of the
Secretary of Labor pursuant to 42 U.S.C. S 5851(c).5 The
Secretary of Labor had subject matter jurisdiction over this
action pursuant to 42 U.S.C. S 5851(b).

III. DISCUSSION

A. Standard of Review

A reviewing court may overturn a decision of the
Secretary only if it is "arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with the law." 5
U.S.C. S 706(2)(A);6 see Southwestern Pa. Growth Alliance v.
Browner, 121 F.3d 106, 111 (3d Cir. 1997). However, while
we pay deference to the Secretary in construing the
statutes he is charged with administering, Chevron U.S.A.,
Inc. v. Natural Resources Defense Council, Inc., 467 U.S.
837, 104 S.Ct. 2778 (1984), and will set aside the
Secretary's factual determinations only if they are
unsupported by substantial evidence, 5 U.S.C. S 706(2)(E),

_____

3. Hydro petitioned the Court of Appeals for the Sixth Circuit because
the events at issue here took place within that circuit. Doyle petitioned
this court as Hydro's office was within this circuit.

4. Doyle has filed an action in the United States District Court for the
Western District of Pennsylvania to enforce the monetary award of the
ARB but the district court has stayed that case pending disposition of
the petitions before this court.

5. Section 5851(c) states, in pertinent part, that "[a]ny person adversely
affected or aggrieved by an order issued [by the Secretary of Labor] . . .
may obtain review of the order in the United States court of appeals for
the circuit in which the violation, with respect to which the order was

issued, allegedly occurred."

6. 42 U.S.C. S 5851(c)(1) incorporates by reference section 706 of the Administrative Procedure Act.

we exercise plenary review in deciding questions of law. See Dill v. INS, 773 F.2d 25, 28 (3d Cir. 1985); see also Williams v. Metzler, 132 F.3d 937, 946 (3d Cir. 1997) ("we owe no deference to an erroneous conclusion of law").

B. Hydro's Liability Under the ERA

Section 2107 of the ERA prohibits an employer from discharging or otherwise "discriminat[ing] against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee" engaged in any of the activities protected under the Act, including reporting an alleged nuclear safety violation or refusing to engage in any practice made unlawful by the ERA. 42 U.S.C. S 5851(a). 8

The Energy Policy Act of 1992, Pub.L. No. 102-486, 106 Stat. 2776, effective October 24, 1992, amended section 210 to incorporate a burden-shifting paradigm whereby the burden of persuasion falls first upon the complainant to demonstrate that retaliation for his protected activity was a "contributing factor" in the unfavorable personnel decision.9

_____

7. When Doyle brought his complaint, the whistleblower protections at issue were included in section 210 of the ERA. In 1992, Congress redesignated the relevant section as 211. See Timmons v. Mattingly Testing Servs., No. 95-ERA-40, 1996 DOL Ad. Rev. Bd. LEXIS 30, at *1 n.2 (June 21, 1996).

8. In 1992, Congress extended ERA protection to employees lodging internal complaints. Previously, a number of courts had distinguished between whistleblowers who provide information to government entities from those who complain merely to the employer. Compare Brown & Root, Inc. v. Donovan, 747 F.2d 1029, 1034 (5th Cir. 1984) (absence of express language covering employees filing internal complaints suggests that Congress intended to deny protection), with Kansas Gas & Elec. Co. v. Brock, 780 F.2d 1505, 1512-13 (10th Cir. 1985) (rejecting a "narrow, hyper-technical reading of S 5851 . . . to effect the statute's aim of protection" by extending coverage to cases involving the filing of internal complaints). The Act as amended now protects an employee who "notified his employer of an alleged violation of this chapter or the Atomic Energy Act of 1954," 42 U.S.C. S 5851(a)(1)(A), and an employee who "refused to engage in any practice made unlawful by this chapter or the Atomic Energy Act of 1954, if the employee has identified the alleged illegality to the employer," 42 U.S.C. S 5851(a)(1)(B).

9. The amendment, aptly titled "Avoidance of Frivolous Complaints," also adopted a host of additional gatekeeping functions (for example, the

However, these amendments do not apply here because Doyle filed his claim well before October 24, 1992. See Pub.L. No. 102-486, 106 Stat. 2776, 3125.

We find no guidance in the governing provisions of the ERA in force before the 1992 amendments allocating the procedural burdens in a section 210 whistleblower discrimination claim. However, prior to 1992, the Secretary consistently utilized the burden shifting taxonomy for ERA retaliation actions set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). See, e.g., Dysert v. Westinghouse Elec. Corp., No. 86-ERA-39, 1991 DOL S. Labor LEXIS 72 at *4-5 (Oct. 30, 1991); Riden v. Tennessee Valley Auth., No. 89-ERA-49, 1990 DOL S. Labor LEXIS 80 at * 10-12 (Feb. 9, 1990); Long v. Roadway Express, Inc., No. 88-STA-31, 1989 DOL S. Labor LEXIS 53 at *10 (Sept. 15, 1989).

---

Secretary cannot even initiate an investigation until the complainant establishes a prima facie case). See Pub.L. 102-486, 106 Stat. 2776, 3123(d). 42 U.S.C. S 5851(b)(3) now provides:

(A) The Secretary shall dismiss a complaint filed under paragraph (1), and shall not conduct the investigation required under paragraph (2), unless the complainant has made a prima facie showing that any behavior described in subparagraphs (A) through (F) of subsection (a)(1) of this section was a contributing factor in the unfavorable personnel action alleged in the complaint.

(B) Notwithstanding a finding by the Secretary that the complainant has made the showing required by subparagraph (A), no investigation required under paragraph (2) shall be conducted if the employer demonstrates, by clear and convincing evidence, that it would have taken the same unfavorable personnel action in the absence of such behavior.

(C) The Secretary may determine that a violation of subsection (a) of this section has occurred only if the complainant has demonstrated that any behavior described in subparagraphs (A) through (F) of subsection (a)(1) of this section was a contributing factor in the unfavorable personnel action alleged in the complaint.

(D) Relief may not be ordered under paragraph (2) if the employer demonstrates by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of such behavior.

11

Moreover, even though the Supreme Court never ruled on the point, a number of other courts of appeals followed course by applying the burdens of proof and production originally created to address actions arising under the Civil Rights Act of 1964, 42 U.S.C. S 2000e et seq., to whistleblower retaliation claims brought under the ERA prior to the 1992 amendments. See, e.g. , Kahn v. United States Sec'y of Labor, 64 F.3d 271, 277-78 (7th Cir. 1995);

Bechtel Constr. Co. v. United States Sec'y of Labor , 50 F.3d 926, 933-34 (11th Cir. 1995); Couty v. Dole, 886 F.2d 147, 148 (8th Cir. 1989); Consolidated Edison Co. of New York, Inc. v. Donovan, 673 F.2d 61, 62 (2d Cir. 1982); cf. Passaic Valley Sewerage Comm'rs v. United States Dep't of Labor, 992 F.2d 474, 480-81 (3d Cir. 1993) (adapting McDonnell Douglas prima facie standard to retaliatory discharge claim under the Clean Water Act, 33 U.S.C. S 1367(a)); Moon v. Transport Drivers, Inc., 836 F.2d 226, 229 (6th Cir. 1987) (same, under the Surface Transportation Assistance Act, 49 U.S.C. S 2305(a)).

We find no reason to deviate from the procedure followed by the Secretary and the other courts of appeals and thus we will not distinguish ERA actions from claims arising under analogous anti-retaliation statutes. Accordingly, we adopt the McDonnell Douglas burden shifting guidelines in our analysis of this case.10 Under this burden shifting regime the employee in the first instance must establish a prima facie case. If he does then the burden shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse action. If the employer does so the employee is required to prove that the employer's proffered reason for its action is a mere pretext for unlawful retaliatory conduct. See Kahn, 64 F.3d at 277-78. For Doyle to establish a prima facie case he must demonstrate: (1) his engagement in protected activity; (2) Hydro's awareness of his engagement in protected activity; (3) an adverse employment action; and (4) a sufficient inference of

_____

10. We note further that the parties do not dispute the applicability of the standard.

12

retaliatory motive. See Macktal v. United States Dep't of Labor, 171 F.3d 323, 327 (5th Cir. 1999).11

Thus, in spite of its considerable procedural twists and turns,12 we are satisfied that this case boils down quite simply to the following issue: Did Doyle, in the first instance, make out a prima facie case of unlawful retaliation on the part of Hydro? We answer this question in the negative.13

First, we conclude that Doyle did not engage in protected activity when he refused to sign the employment application with the release. The Secretary, disagreeing with the Wage and Hour Division of the Department of Labor and the administrative law judge, determined that by signing the release Doyle "would have waived his right to file a complaint of illegal blacklisting under the ERA." Consequently, he concluded that the waiver -- as so construed -- violated the ERA because it created for employees an impermissible Hobson's Choice between employment and the reporting of safety hazards. As such, Doyle's refusal to sign constituted protected activity as the release could not be used lawfully to waive his right.

11. Regardless, even were we to reject the applicability of McDonnell Douglas to an action for retaliation under the ERA, the statute compels that we reach the pivotal issue of whether Hydro discriminated against Doyle because he availed himself of ERA-protected rights. See Blum v. Witco Chem. Corp., 829 F.2d 367, 372 n.2 (3d Cir. 1987) ("Once a case has been fully litigated, however, it is unnecessary for the appellate court to decide whether a prima facie case had, in fact, been established.") (internal punctuation omitted).

12. While we understand that the scope of any litigation may far exceed its reasonably contemplated time and costs, it is simply inexplicable that this fairly straightforward case has toiled in the federal administrative and judicial dockets for more than 13 years. Even taking into account the changes in governmental administration, we especially are confounded by the fact that the record reflects no activity in the case from July 11, 1989, until March 30, 1994, when the Secretary made his initial Final Decision and Order. In this regard we point out that this decision and order consisted of a nine-page double spaced letter of no great complexity.

13. Hydro does not contend that the Secretary erred in regarding Doyle as covered by section 210 even though he was merely an applicant for employment.

13

Yet the release said nothing about waiving liability for illegal blacklisting. It merely released the enumerated organizations from liability as a "result[ ] of furnishing or receiving such information pursuant to this authorization." This limited purpose was consistent with the authorization's provision waiving rights to privacy in its first paragraph. Furthermore, the third paragraph of the authorization confirms the limited purpose of the release by authorizing Hydro to use the information for the enumerated purposes ("evaluation" and "eligibility for clearance") without suggesting that an employment applicant released Hydro from liability under the ERA if it made an unlawful employment determination. The release simply did not purport to waive liability for Hydro's employment decisions or other claims Doyle might make under the ERA after Hydro received information pursuant to the authorization. It merely released potential claims for privacy infringement.

Moreover, even if the release, as the Secretary thought, could be construed to include a waiver of Doyle's right to file a complaint for illegal blacklisting, the Secretary should not have so construed it in light of a well-recognized principle of law requiring that ambiguous documents should not be deemed illegal where capable of constructions that will validate them. See Walsh v. Schlecht, 429 U.S. 401, 407-08, 97 S.Ct. 679, 685 (1977). After all, the Secretary himself made the point that such a waiver would be unenforceable. Thus, the Secretary should not have construed the authorization to include an illegal release.

In sum, the Secretary went through the following process. He took a release that he regarded as ambiguous and construed it to apply to situations that by its terms it did not include. He then held that the release was unlawful and found liability by reason of Hydro's action in refusing to hire Doyle because he would not sign the authorization with the release. But we will not similarly construe the release to have the expansive effect the Secretary attributes to it and, accordingly, we hold that Doyle simply was not engaging in a protected activity when he refused to sign the authorization with the release.[14] Thus, Hydro must prevail in these proceedings.

---

14. We see no reason to defer to the Secretary on this issue of law involving the construction of a proposed contract rather than

14

There is a second, independent reason why we are constrained to grant Hydro's petition and set aside the decision and order of the ARB. Accepting arguendo that Doyle established a prima facie case, he has not offered substantial evidence to support a conclusion that Hydro's proffered legitimate reasons for refusing to hire him without his signing the authorization with the release -- namely, to ensure power plant integrity and compliance with the governing regulatory framework[15] by hiring only carefully screened temporary employees -- were pretextual, as required to impose liability. This point is critical for the Supreme Court in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 2106 (2000), indicated that once the employer provides a legitimate, non-discriminatory reason for the personnel decision, the

---

construction of a statute. See Williams v. Metzler, 132 F.3d at 946. In reaching our result we are treating this case as involving contractual construction rather than interpretation as the parties' stipulation of facts did not address the meaning of the release and the parties did not address its meaning with other evidence. Thus, this is not a case in which the Secretary reached a conclusion after a plenary hearing addressing the parties' intent when Hydro tendered the authorization. Moreover, we do not find the release to be ambiguous. See Beck v. Reliance Steel Prods., 860 F.3d 576, 581 (3d Cir. 1988). We also note that the Secretary must have thought that he was construing the release as he made it clear that he was dealing with its "scope and effect." Regardless, even if we treated the case as involving contractual interpretation rather than construction our result would be the same as the evidence, i.e., largely the authorization itself, could not support the Secretary's result.

15. See, e.g., 53 Fed.Reg. 7534 (The Nuclear Regulatory Commission proposing background investigation, psychological evaluation, and behavioral observation of individuals who require unescorted access to vital areas of nuclear facilities); see also 10 C.F.R. S 73.56 (1991) (unescorted access authorization "must include . . . [a] background investigation designed to identify past actions which are indicative of an

individual's future reliability within a protected or vital area of a nuclear power reactor. As a minimum, the background investigation must verify an individual's true identity, and develop information concerning an individual's employment history, education history, credit history, criminal history, military service, and verify an individual's character and reputation.").

burden shifts to the complainant to show by a preponderance of the evidence that the employer's benign explanation was contrived in order to obscure the genuine discriminatory motive percolating beneath.

Here, Doyle simply did not meet that burden.[16] Indeed, the record makes clear that Hydro furnished the authorization to all applicants for temporary positions. More significantly, the record does not illustrate that Hydro previously made exceptions in its hiring practices for applicants, if there were any, similarly situated to Doyle who insisted on signing a modified version of the authorization or on not signing the authorization at all.[17] See EEOC v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990) (a disparate treatment violation is made out only when an individual is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion). Without any

---

16. In fact, the Secretary never addressed in his Final Decision and Order the issue of Hydro's discriminatory intent and instead expressly limited the inquiry simply to a determination of whether the activities in which Doyle participated and for which Doyle was not hired were protected statutorily. See JA at 21 n.5 ("The issue here, however, is not whether use of the form was a pretext for discrimination or some other impermissible reason. Respondent's reason for not hiring Complainant is clear. The only issue is whether that reason is itself a violation of the ERA.") (emphasis added). However, retaliation as a matter of law (and logic) does not occur unwittingly and, therefore, a finding of liability requires "an inquiry into the defendant's state of mind" to prove that "the defendant subjectively intended to discriminate against the plaintiff " on account of his engagement in a protected activity. EEOC v. Chicago Miniature Lamp Works, 947 F.2d 292, 297 (7th Cir. 1991) (citing Intl. Bhd. of Teamsters v. United States, 431 U.S. 324, 336 n.15, 97 S.Ct. 1843, 1854 n.15 (1977)).

17. Likewise, the record does not explicate that Hydro accommodated applicants comparable in all respects to Doyle save for previous whistleblowing activity. Of course, the gravamen of Doyle's complaint was not that Hydro retaliated because he disclosed prior whistleblowing activities, but because he refused to sign the authorization as written. See JA at 179-80 (advancing, in his initial complaint to the Department of Labor, arguments concerning only the legitimacy of the waiver); see also JA at 202-204 (same, in his Prehearing Statement of Position); JA at 206-07 (same, in his Motion for Summary Decision).

circumstantial evidence to suggest that Hydro treated him less favorably because of his exercise of rights purportedly protected under the ERA, Doyle's inventive characterization of the parties' stipulation of facts standing alone is unavailing.18

Doyle suggests that Hydro's discriminatory intent nevertheless may be inferred from the authorization itself. We are not persuaded because the document is facially neutral, singling out neither the ERA and any rights protected thereunder, nor Doyle individually. Likewise, the authorization does not differentiate between employers in high-risk industries like nuclear power that trigger our greatest concerns about blacklisting and employers in otherwise innocuous, generic industries from whom information also could be sought in the application process. Moreover, as we previously have discussed, the terms of the authorization with the release served only to facilitate -- without incurring liability -- Hydro's assimilation of necessary and highly sensitive employee background information and not to insulate Hydro from potential ERA claims or to chill manque nuclear whistleblowers. See DiBiase v. SmithKline Beecham Corp., 48 F.3d 719, 727 (3d Cir. 1995) ("The touchstone of explicit facial discrimination is that the discrimination is apparent from the terms of the policy itself ").19

_____

18. Doyle purports to extrapolate from the stipulated facts, JA at 194-96, that Booker (and by extension, Hydro) must have intended to force him to waive his rights under section 210 as a condition of employment because Booker refused to alter the form even though Doyle was perfectly willing to permit complete access to his previous employment records. However, as Hydro correctly notes, Doyle's induction depends on an assumption not borne out by the record that Booker understood that the standard version of the form functioned to release Hydro from future claims under the ERA.

19. Compare Int'l Union, UAW v. Johnson Controls, Inc., 499 U.S. 187, 192, 197, 111 S.Ct. 1196, 1200, 1202 (1991) (policy that "women who are pregnant or who are capable of bearing children will not be placed into jobs involving lead exposure or which could expose them to lead through the exercise of job bidding, bumping, transfer or promotion rights" was facially discriminatory because it"excludes women with childbearing capacity from lead-exposed jobs and so creates a facial

17

It is undeniable that Hydro initially required Doyle to sign the authorization before it was aware of his prior claim against Alabama Power and that in doing so it treated him the same as other applicants for employment. Furthermore, in view of the highly regulated nature and risks in the nuclear power industry we cannot hold that Hydro did not have a legitimate reason for requiring him to sign the release. Indeed, despite Doyle's protestations to the contrary, the other forms he signed in connection with the employment application are not comparable to the authorization because they concerned only an applicant's

possible prior criminal record, not his full employment history. See JA at 261, 269. Thus, Doyle's case must fail. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

IV. CONCLUSION

For the foregoing reasons, we will grant the petition for review filed by Hydro in No. 00-2035, and set aside the March 30, 1994 Final Decision and Order of the Secretary of Labor as to liability and the May 17, 2000 Final Decision and Order of the ARB as to damages and remedies. We will dismiss the petition for review filed by Doyle in No. 00-1589 as moot because we are setting aside the finding of liability

_____

classification based on gender"); Los Angeles Dep't of Water & Power v. Manhart, 435 U.S. 702, 98 S.Ct. 1370 (1978) (employer's policy requiring female employees to make larger contribution to pension fund than male employees is discriminatory on its face); Connecticut Light & Power Co. v. Sec'y of United States Dep't of Labor, 85 F.3d 89, 95-96 (2d Cir. 1996) (proposed settlement agreement violated the ERA because it contained explicit gag provisions aimed at having the employee relinquish his statutory rights); EEOC v. Board of Governors of State Colls. & Univs., 957 F.2d 424, 431 (7th Cir. 1992) (holding that a collective bargaining agreement violated the anti-retaliation provision of the Age Discrimination in Employment Act because, on its face, it unambiguously denied an employee his contractual right to file an in-house grievance once he elected to file an age discrimination charge).

18

outright without further proceedings. This opinion is intended to bring this case to a conclusion.

19

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent from the majority's opinion. This case is not about contract law. It is about statutory interpretation and, as the Secretary of Labor recognized, Congress' goal of protecting our nation from a nuclear accident through the promotion of safety in the nuclear power industry. Quite simply, workers who report safety violations should be protected and not suffer retaliation for their good deeds.

In the instant case, the Secretary looked to the text and underlying purposes of the employee protection provisions of the ERA and construed the statute to protect Shannon T. Doyle's ERA whistleblower rights. Because of the compelling public interest in keeping channels of information open, the Secretary decided that employees must not be compelled to sign what they believe to be a waiver of past and future

ERA claims as a condition of employment.

On its face, Hydro's waiver can be read to release former employers as well as putative employers from liability.[1] This is how Mr. Doyle, a lay person unrepresented by counsel, read the release during his pre-employment screening, and it is likely how a lay person in the same situation would understand the release language.[2] The legal insufficiency of the waiver is immaterial because an ordinary reader would not know that the waiver could not be used by the employer as a defense to a retaliation claim.

I would reject this release not just as a violation of Mr. Doyle's ERA rights, but as a violation of all employees'

_____

1. The waiver of liability includes sweeping terms, such as "furnishing or receiving any information pertaining to me from any and all liability or claim . . ." (emphasis added).

2. I quote from the Secretary's decision:

> I note that Complainant is a layman who was not represented by counsel when the dispute over the authorization form took place. Even lawyers can disagree over the scope and effect of the language in question. It is not surprising that Complainant refused to sign a form which could easily be interpreted as a waiver of his rights under the ERA.

JA at 16, n.1.

rights. Anyone signing this release could be left with the impression that they have waived their right to bring a retaliation suit against Hydro or any past employer. This impression would chill the employee's inclination to report safety issues to the proper regulatory authorities. Under this scenario, Congress' goal of making the nuclear industry safer by protecting potential whistleblowers is fundamentally undermined. See Passaic Valley Sewerage v. United States Dept. of Labor, 992 F.2d 474, 478 (3d Cir. 1993) ("Such 'whistle-blower' provisions are intended to promote a working environment in which employees are relatively free from the debilitating threat of employment reprisals for publicly asserting company violations of statutes protecting the environment . . . .").

A broad interpretation of the scope of ERA protection comports with the ERA's remedial purpose and the legislative history indicating that a narrow interpretation of the employee protection provisions would frustrate the intent of Congress. See Connecticut Light & Power Co. v. Secretary of Labor, 85 F.3d 89, 94 (2d Cir. 1996) (upholding Secretary's broad interpretation of the term "employee" to cover an employee recently terminated). See also Bechtel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 932 (11th Cir. 1995) ("[I]t is appropriate to give a broad construction to remedial statutes such as nondiscrimination provisions

in federal labor laws."); Kansas Gas & Elec. Co. v. Brock, 780 F.2d 1505, 1512 (10th Cir. 1985) (affirming the Secretary's broad interpretation of protected activity).

Additionally, Hydro's refusal to alter the release upon learning of Mr. Doyle's concerns supports the inference that Hydro used Doyle's refusal to sign as a convenient way to avoid hiring an individual who is zealous about nuclear safety. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.").

Finally, Hydro did not need the waiver of liability to get the information it required about Mr. Doyle. The screening procedures of the American National Standard on Security for Nuclear Power Plants (ANSI) indicate that all the

21

background information necessary to meet the ANSI standard can be obtained through a simple release; there is nothing in the standard or screening requirements that requires a waiver of liability. The Secretary makes this point forcefully: "Respondent has not offered any reason why the background information it needs to conduct the screening under the ANSI standard cannot be obtained with a release which does not include a waiver of liability." JA at 21.

I would sustain the Secretary's decision. In this case, we have done a grave injustice to Mr. Doyle, a man who was blacklisted from his chosen line of work for attempting to preserve his rights under a federal statute.[3] We have upheld an employer's ability to make its employees uncertain about the status of their nuclear whistleblower rights. We have thereby dealt a blow to the safety of the nuclear industry.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

---

3. Despite diligently seeking employment outside the nuclear industry, Mr. Doyle was only able to obtain three non-nuclear related jobs between November 1988 and December 1994 (the date of the hearing on damages) from which he earned a total of about $3000. Hydro's publication of its decision to deny Mr. Doyle access at a nuclear power plant had a devastating psychological, emotional, and financial impact on Mr. Doyle and his family.

22